# THE CHESAPEAKE INSURANCE COMPANY
## v. STARK.

The agent who makes insurance for his principal, has authority to abandon without a formal letter of attorney.

The informality of a deed of cession is unimportant, because, if the abandonment be unexceptionable, the property vests immediately in the underwriters; and the deed is not essential to the right of either party.

If the abandonment be legal, it puts the underwriters completely in the place of the assured, and the agent of the assured becomes the agent of the underwriters.

A special verdict is defective which does not find whether the abandon-

ERROR to the circuit court of the district of Maryland, in an action of covenant upon a policy of insurance upon goods on board the ship Minerva, from Philadelphia to Laguira, and back to Philadelphia.

The cause was tried upon the issue of *non infregit conventionem*, and the jury found a special verdict, stating the following facts :

On the 5th of March, 1807, *Christian Dannenberg*, as agent of the plaintiff, who was a citizen of Pennsylvania, shipped for Laguira, on account, and at the sole risk, of the plaintiff, sundry goods, being American property, and regularly documented as such, to the value of 8,700 dollars and upwards, on board the ship Minerva, and consigned them to William Parker, supercargo on board. On the 12th of March she sailed with the goods from Philadelphia for Laguira.

On the 21st of March, *Charles G. Boerstler*, for the plaintiff, effected an insurance with the Chesapeake Insurance Company, who are citizens of the state of Maryland, upon the goods, to the amount of 8,700 dollars, by the policy mentioned in the declaration, which was executed under the common seal of the company.

On the outward voyage she was captured by a British privateer and carried into Curraçoa. On the 29th of April, 1807, the captain made a protest. On the 13th

of June, 1807. the ship and goods being still in possession of the captors at Curraçoa, and there detained by them, the said Charles G. Boerstler, " *for the plaintiff*," abandoned to the Chesapeake Insurance Company, the goods shipped by Dannenberg for the plaintiff, by a letter to the president and directors of the Chesapeake Insurance Company, the defendants, in the words and figures following:

" Baltimore, June 13, 1807.

<sup>a</sup> President and Directors of the ⎱
Chesapeake Insurance Company, ⎰

"Gentlemen,

" Having this morning received a letter from Mr. C. Dannenberg, of Philadelphia, the agent for Mr. John Philip Stark, of Hanover, ordering me to abandon the goods shipped by him, for Mr. Stark's account, on board the American ship Minerva, Captain Newcomb, carried into, and detained at Curaçoa, on her voyage from Philadelphia to Laguira, whereby the object of the expedition is totally frustrated and destroyed; I herewith abandon to you the whole of Mr. Stark's interest in the cargo of the Minerva, which you have insured in your office.

" I have the honour to be, gentlemen, your most
"obedient servant,
" *Charles G. Boerstler*."

Which abandonment the defendants then refused to accept.

W. Parker, the supercargo, addressed a memorial to the governor of Curraçoa, on the 19th of June, 1810, in which he complains of the detention as being of the most ruinous consequences to the *owners*.

On the 25th of July, 1807, the vessel and cargo being still detained at Curraçoa, in the possession of the captors, Parker entered into an agreement with I. F. Burke, the owner of the privateer, by which a certain

*Margin note:*
CHES. IN. CO.
v.
STARK.

ment was in reasonable time. What is reasonable time of abandonment, is a question compounded of fact and law, which must be found by a jury under the direction of the court.

CHES. IN. Co.
v.
STARK.

part of the goods, should be appraised and the price paid by Parker, to be repaid by Burke in case the goods should not be adjudged good prize; and that a certain other part should be kept by Burke, upon his engaging to pay the value thereof in the like case. In consequence of which agreement the vessel was liberated, and proceeded to Laguira, where the goods were sold, and produced about 5,900 dollars.

Parker employed an agent to attend the trial at Tortola, and to claim the goods for the plaintiff; but a trial was never had, nor any proceedings instituted for the purpose of obtaining an adjudication.

On the 22d of August, 1807, Dannenberg, as agent of the plaintiff, executed a deed to the Chesapeake Insurance Company, transferring to them all his right and title to the goods, as attorney of the plaintiff, which deed they refused to receive.

*Winder* and *Martin*, for the plaintiffs in error, contended,

1. That the contract by *Parker with Burke* was either the personal contract of Parker, or the contract of Stark; and was the cause of the loss.

2. That there was no sufficient abandonment. Dannenberg was the agent of the plaintiff to make the shipment, but he had no power to abandon, nor to transfer to the defendants the rights of the plaintiff. Much less could *Boerstler*, the friend of Dannenberg. If the vessel and cargo had returned after the abandonment, there was nothing to prevent Stark from claiming. The deed of cession ought to have been under the plaintiff's seal, or a power of attorney, under seal, should be produced.

3. The abandonment was not in due time.

*Harper*, contra.

If the authority of Dannenberg to abandon does not

appear in the special verdict, nor the time when he received notice of the loss, this court will award a *venire facias de novo*, because the jury have found the *evidence* of the authority and time, but not the *fact* of authority, nor the reasonableness of the time.

In a mercantile transaction no instrument under seal is necessary. The letter is found which states the fact of abandonment, and the jury find the agency of Dannenberg. The letter states the authority of Boerstler, and the jury have found his authority. This throws the burden of proof on the other side. The deed of cession from Dannenberg states that he acts for Stark, and as his attorney. The jury find that it was done by Dannenberg *for* Stark. It was not necessary that the deed should have been executed in the name of Stark. It is as well if it be signed by Dannenberg, as his agent or attorney.

After the abandonment Parker became the agent of the underwriters, who were then the owners. It is a general principle that all acts done *bona fide* for the best interest of all concerned, are the acts of the underwriters, after a rightful abandonment. The assured cannot then revoke ; nor can the underwriters throw back the property, without the consent of the assured.

*Martin,* in reply.

The question is, whether the assured can *elect* by attorney to abandon. Parker could not be considered as the agent of the underwriters, in doing an act which *could* not benefit them.

The plea of *non infregit* was decided, before the statute of *jeofails,* to be an *informal,* but not an immaterial plea. 1 *Sid.* 183. 1 *Lev.* 290. It would have been bad upon special demurrer, but it is aided by the verdict. No other form of pleading has ever been used in Maryland, upon a sealed policy.

HES. IN Co.
v.
STARK.

*March* 14.

MARSHALL, Ch. J. delivered the opinion of the court as follows:

On the principal question in this case the court can entertain no doubt. On the capture of the Minerva, the right to abandon was complete, and this right was exercised during her detention.

The objections to the form of the abandonment are not deemed substantial. The agent who made the insurance might certainly be credited, and, in transactions of this kind, always is credited, when he declares that, by the order of his principal, he abandons to the underwriters. In this case, the jury find that the abandonment was made for the plaintiff; and this finding establishes that fact.

The informality of the deed of cession is thought unimportant, because, if the abandonment was unexceptionable, the property vested immediately in the underwriters, and the deed was not essential to the right of either party. Had it been demanded and refused, that circumstance might have altered the law of the case.

If the abandonment was legal, it put the underwriters completely in the place of the assured, and Parker became their agent. When he contracts on behalf of the owners of the goods, he contracts on behalf of the underwriters, who have become owners, not on behalf of Stark, who has ceased to be one. His act is no longer the act of Stark, and is not to be considered as an interference, on his part, which may affect the abandonment. If any particular instructions had been given on this subject, if any act of ownership had been exerted by Stark himself, such conduct might be construed into a relinquishment of an abandonment which had not been accepted; but as nothing of the kind exists, the act of the supercargo is to be considered as the act of the persons interested, whoever they may be.

The only point which presents any difficulty in the opinion of the court, is the objection founded on the omission, in the verdict, to find that the abandonment was made in reasonable time.

The law is settled that an abandonment, to be effectual, must be made in reasonable time ; but what time is reasonable is a question compounded of fact and law, which has not yet been reduced to such certainty as to enable the court to pronounce upon it, without the aid of a jury. Certainly the delay may be so great as to enable every man to declare, without hesitation, that it is unreasonable, or the abandonment may be so immediate, that all will admit it to have been made in reasonable time : but there may be such a medium between these extremes, as to render it doubtful whether the delay has been reasonable or otherwise. If it was a mere question of law which the court might decide, then the law would determine, to a day or an hour, on the time left for deliberation, after receiving notice of the loss. But the law has not so determined, and it therefore remains a question compounded of fact and law, which must be found by a jury under the direction of the court.

In this case the jury have found an abandonment, but have not found whether it was made in due time or otherwise. The fact is, therefore, found defectively ; and for that reason a *venire facias de novo* must be awarded.

It may not be amiss to remark that the judicial opinions which we generally find in the books, on these subjects, are usually given by way of instruction to the jury, or on a motion for a new trial, not on special verdicts. The distinction between the cases deserves consideration.

Judgment reversed, and the cause remanded, with direction to award a *venire facias de novo*.