JOSEPH   W.   HASKINS   *vs.*   HAMILTON   MUTUAL   INSURANCE
.COMPANY.

Under *St.* 1852, *c.* 312, a misrepresentation of the assured, not specified in the defendants'
answer, cannot be relied on to show a policy of insurance to be void, and so defeat an
action thereon, although first disclosed by the plaintiff's evidence.

The question whether repairs made by insurers, under a right reserved in the policy, are
made within a reasonable time, depending on the dates of various notices given by the
parties to each other, the delay occasioned by the sickness and death of workmen em-
ployed, and the peculiar nature of the property, must be submitted to the jury, although
the particular circumstances are not disputed.

A by-law of a mutual fire insurance company, which provides that "the directors may,
within a reasonable time, rebuild, repair or replace the property lost or damaged," but
shall not be authorized to proceed until the assured shall have given security to con-
tribute one third of the expense, "nor shall the company be liable to any action for the
loss, until such security shall have been furnished, nor unless the company shall neglect
for thirty days thereafter to proceed to rebuild, repair or replace," does not prevent the
assured, upon the failure of the company to complete within a reasonable time such
repairs, commenced within the thirty days after the giving of such security, from main-
taining an action on the policy for the loss.

One who has purchased and sold machinery of a peculiar kind, and owned and run it for
a year, and had repairs made upon it, and made estimates of the cost of building such
machinery, and procured such estimates of other machinists for the purpose of having
such machines' manufactured, is a competent witness to state his opinion of its value.

ACTION OF CONTRACT, commenced on the 18th of February
1854, against a mutual fire insurance company, on a policy of
insurance dated June 1st 1853, for $3,000, for three years, on
fifty seven machines for manufacturing boot and shoe laces in
the plaintiff's shop in Byfield, alleged to have been destroyed
by fire on the 11th of August 1853.   By the eighth article of
the defendants' by-laws, which were annexed to the policy, and
to " the provisions, conditions and limitations of " which it was
expressly made subject, " in case of loss of personal property,
where the value is fluctuating, as stocks in trade, the company
will insure two thirds only of the average value, but will be held
liable to pay not more than two thirds of the value of said prop-
erty at the time of the loss, and not exceeding the amount in-
sured ; " and " the value of the insured property, at the time of
insurance, and at the time of loss, shall be subject to be inquired

into and ascertained, and the value stated in the application shall in no case be conclusive upon the company."

The answer admitted the making of the policy, the loss by fire, and notice thereof to the defendants; but denied that the value of the property or the amount of the loss was as alleged in the declaration. The only other ground of defence stated in the answer was that, according to the twenty-third article of the by-laws, (set forth in the answer, and copied in the margin,[*]) the directors of the company, on the 21st of October 1853, determined to rebuild, repair and replace the property, of which the plaintiff had notice; and on the 19th of November 1853 the plaintiff furnished to the directors satisfactory security for the payment of the sum which he might be found liable to contribute according to said by-law; and the defendants repaired, rebuilt and replaced the property within a reasonable time, and ten-

---

[*] ART. 23. The directors may, within a reasonable time, rebuild, repair or replace the property lost or damaged. And when they rebuild or replace any whole subject or item of insurance, the assured shall contribute one third of the expense; provided always, that when this company are the only insurers, the assured shall not be bound to contribute an amount greater than one half the amount of the insurance thereon; but if there be other insurers, who for any cause do not contribute their full share in such rebuilding or replacing, then the assured shall also contribute such further portion of the expense as such insurers would have to bear, were they to unite in the contribution to the amount of their full share. And when the whole subject of insurance shall not be destroyed, such portion thereof as shall be valuable for the purpose of rebuilding, repairing or replacing, may be contributed by the insured as a part of the one third for which he is liable, or it may be used by the directors; and if the value of such portion shall not be mutually agreed upon, it shall be determined by three disinterested men, to be selected by the parties, or, in case of disagreement, one by each party, the two having power to appoint a third.

Whenever the directors shall vote to rebuild, repair or replace, under the provisions of this section, they shall not be authorized to proceed therein until the insured shall have furnished to them satisfactory security, by note, bond or otherwise, with sufficient securities for the payment of the amount which he shall be found liable to contribute; nor shall the company be liable to any action for the loss until such security shall have been furnished, nor unless the company shall neglect for thirty days thereafter to proceed to rebuild, repair or replace, as the case may be.

dered it to the plaintiff, and requested him to provide a place to receive it, and he neglected and refused to do so, or to receive the property

At the trial before *Metcalf*, J., the plaintiff offered evidence to prove the value of the machinery at the time of the loss, and it appeared by this evidence that the machinery was bought by the plaintiff shortly before making this application; that it had been in almost constant use ever since the spring of 1849, and that a large part of it, even then, bore the appearance of having been used for some time. The application, which was expressly made a part of the policy, declared that any concealment of the condition of the property would make the policy void, and contained the following question and answer: " State the condition and general appearance of the machinery, its age, and how long it has been running." *Answer.* " All new, and in good order."

The defendants contended that this was a misrepresentation, which, whether material to the risk or not, avoided the policy, and that they had a right to take advantage of it, though not pleaded in their answer; and also offered evidence tending to prove that the age and condition of machinery were facts material to the risk of insuring such property. But the presiding judge ruled that this defence was not open to the defendants under the pleadings, and excluded the testimony.

To support their defence under the twenty-third by-law, the defendants proved the following facts: On the 21st of October 1853, their directors voted to rebuild the property destroyed, and to require security of the plaintiff, as stipulated in said by-law; and immediately gave the plaintiff notice of this vote. On the 19th of November 1853, the plaintiff furnished the security required. On the 23d of November, the defendants made a contract in writing with a machinist to construct machinery, on or before the 1st of February 1854, in the place of that destroyed; and, on the 28th of November, gave the plaintiff written notice of their having made this contract, and of their wish to have the building ready to receive it before said 1st of February  The contractor began to build the machinery soon

after the making of the contract, and employed six men upon it, and expected to have it completed by the time agreed, but his foreman fell sick and died; and the contractor testified that he then made unusual efforts to complete the machinery, hired extra men, and paid extra prices, and completed the machinery about the middle of March; and some of the workmen testified that they worked extra hours; and both the contractor and several of his workmen testified that the machinery was completed as soon as it could be, being delayed by the death of the foreman. This kind of machinery is kept privately, and there are few machinists acquainted with it. The defendants received no answer to their letter of November 28th, until the 27th of January 1854, when the plaintiff gave them notice that he had procured a building in Byfield for the reception of the machinery, and that it would be ready at the time requested. The defendants' president testified that he did not give the plaintiff notice on the 1st of February that the machinery was not finished; that he did not know where the plaintiff was; and it appeared by other evidence that Charlestown was the place of the plaintiff's known residence, but that he was in Vermont in January or February, or in both those months. As soon as the machinery was finished, the defendants gave notice to the plaintiff that it was ready for him, and sent a part of it to Byfield, to be put in the room indicated by him on the 27th of January; but the plaintiff refused to receive it.

On these facts, the defendants contended that whether the machinery was made within a reasonable time, was a question of law; and that the plaintiff could not maintain this action on the policy for a loss, but should have brought his action, if at all, for damages in not rebuilding and replacing the machinery within a reasonable time, according to the by-law. But the presiding judge ruled "that this action could be maintained on the policy for the loss; and that what was reasonable time was a question of fact for the jury; and that, if the jury should find that this machinery was not completed within a reasonable time, they should find for the plaintiff, and assess damages at two thirds of the value of the machinery at the time of the loss."

There was considerable testimony as to the value of the property at the time of the loss. The defendants called as a witness Rufus T. Slocomb, who testified "that he owned this machinery for a year just before the plaintiff bought it; that he had bought it, run it one year, working in the mill with it, and sold it; that he knew the quality of this machinery, and its value; that, while he owned it, he made estimates of the costs of building such machines, and procured estimates from other machinists, for the purpose of procuring some such machines to be manufactured for himself; that he kept a machinist at work upon the machinery all the time he owned it, and had had its various parts repaired, and parts of it renewed, and that he knew the cost of doing it." He was then asked by the defendants "What said machinery was worth?" But the judge excluded the testimony, "on the ground that the witness, upon all the facts stated by him, could not legally give his opinion of the value of the machinery at the time it was insured by the plaintiff."

The jury found a verdict for the plaintiff, and the presiding judge made a report of the case, concluding as follows : "If any of the above rulings or instructions are wrong, a new trial is to be granted; otherwise, judgment is to be entered on the verdict."

*O. P. Lord & W. C. Endicott,* for the defendants. 1. The misrepresentation of the plaintiff in his application appeared by evidence introduced by himself, and the defendants could take advantage of it, in the same manner as if they had set it out fully in their answer. " The object of a specification of defence is, to give the plaintiff notice of the defence relied upon, that he may come prepared to answer it; but where the plaintiff himself makes it a part of his own case, he cannot be prejudiced by want of notice, nor can he deprive the defendant of the use of the testimony which he himself has introduced." *Davis* v. *Maxwell,* 12 Met. 289. The practice act has not altered the rule, or the reason of it. The plaintiff's evidence proves that there never was any contract between the parties, by reason of the failure of the plaintiff to comply with one of the conditions

which were essential parts of it. It is not a "substantive fact intended to be relied upon in avoidance of the action," within the meaning of *St.* 1852, *c.* 312, § 18. That section of the statute has the same meaning as the former rule of the court of common pleas, repeatedly construed by this court. See *Dixie* v. *Abbott*, 7 Cush. 610. In *Granger* v. *Ilsley*, 2 Gray, 521, relied upon by the plaintiff, the evidence was introduced by the defendant; and the decision was expressly limited by the court to actions upon the common counts, or the count on an account annexed.

The misrepresentation avoided the policy, whether material or immaterial to the risk. *Lowell* v. *Middlesex Mutual Fire Ins. Co.* 8 Cush. 127. *Macomber* v. *Cambridge Mutual Fire Ins. Co.* 8 Cush. 133. *Burritt* v. *Saratoga County Mutual Fire Ins. Co.* 5 Hill, 188. *Delonguemare* v. *Tradesmen's Ins. Co.* 2 Hall, 589. *Jennings* v. *Chenango County Mutual Ins. Co.* 2 Denio, 75. If not, it was a question for the jury whether the misrepresentation was material to the risk.

2. The facts as to the length and reasons of the delay in furnishing the machinery being undisputed, the question, whether the machinery was furnished within a reasonable time, was a question of law. *Smith* v. *Newburyport Marine Ins. Co.* 4 Mass. 667. *Livermore* v. *Newburyport Marine Ins. Co.* 1 Mass. 280. *Tindal* v. *Brown*, 1 T. R. 167. *Darbishire* v. *Parker*, 6 East, 10. The court, upon the facts in this case, showing that the defendants and their contractor used every effort to complete the machinery, and were prevented from furnishing it at the time appointed only by an act of God, should have instructed the jury that the time was reasonable.

3. The plaintiff's remedy, if any, for the defendants' delay in furnishing the machinery, is by an action for failing to rebuild within a reasonable time, and not by action on the policy; for the twenty-third by-law, which is expressly made a part of the plaintiff's original contract of insurance, provides that the company, if they elect to rebuild, and the assured gives satisfactory security, shall not "be liable to any action for the loss, unless the company shall neglect, for thirty days thereafter, to proceed

37 *

to rebuild, repair or replace." The measure of damages in that action would be the difference between the value of the building as restored, and its value at the time of the loss.

This defence is fully pleaded in the defendants' answer. But if it were not, the plaintiff could not now make that objection, not having taken it at the trial, when the defendants might have had opportunity to amend. *Burnett* v. *Smith*, 4 Gray, 53.

4. Slocomb's evidence to the value of the machinery when he owned it, which was just before the application, should have been admitted. *Webber* v. *Eastern Railroad*, 2 Met. 147. *Walker* v. *Boston*, 8 Cush. 279. *Vandine* v. *Burpee*, 13 Met. 291. *Wyman* v. *Lexington & West Cambridge Railroad*, 13 Met. 326.

*S. H. Phillips & J. A. Gillis*, for the plaintiff.

The decision was made at Boston in June 1856.

METCALF, J. 1. Since this case was argued, the court have decided, after full deliberation, that a misrepresentation by the assured, not specified in the defendant's answer, cannot be relied on to defeat an action on the policy, although such misrepresentation is first disclosed by the plaintiff's evidence. *Mulry* v. *Mohawk Valley Ins. Co.*, *post*, 541.

2. We have no doubt that the question, whether the machinery was finished within a reasonable time, was rightly left to the jury. In *Tindal* v. *Brown*, 1 T. R. 168, Lord Mansfield said : " What is reasonable notice is partly a question of fact and partly a question of law. But wherever a rule can be laid down with respect to this reasonableness, that should be decided by the court, and adhered to by every one for the sake of certainty." In *Chesapeake Ins. Co.* v. *Stark*, 6 Cranch, 273, which was an action on a policy of marine insurance, where one question was, whether the assured had made an abandonment in a reasonable time, Chief Justice Marshall said : " The law is settled, that an abandonment, to be effectual, must be made in a reasonable time ; but what time is reasonable is a question compounded of fact and law, which has not yet been reduced to such certainty as to enable the court to pronounce upon it without the aid of a jury. Certainly the delay may be so great, as to enable every man to declare, without hesitation, that it is

unreasonable; or the abandonment may be so immediate, that all will admit it to have been made in reasonable time; but there may be such a medium between these extremes, as to render it doubtful whether the delay has been reasonable or otherwise. If it was a mere question of law, which the court might decide, then the law would determine, to a day or an hour, on the time left for deliberation, after receiving notice of the loss. But the law has not so determined; and it therefore remains a question compounded of fact and law, which must be found by a jury, under the direction of the court." The application of these principles to the present case is too obvious to require illustration.

Besides; there are numerous decisions, from which this case cannot be distinguished, showing that the question of reasonable time was peculiarly proper for the consideration of the jury. In *Facey* v. *Hurdom,* 3 B. & C. 213, and 5 D. & R. 68, the question was whether, after the setting out of tithe, the crop had been left on the ground a reasonable time for the tithe-owner to compare his tenth with the residue. Bayley, J. said : " There certainly are cases where it is for the judge to say what is a reasonable time. But in this instance the question depended upon a variety of circumstances, such as the residence of the respective parties, the time when notice was given that the corn would be tithed, the state of the weather, and other things most proper for the consideration of the jury; and I think that the question was properly left to them." In *Cocker* v. *Franklin Hemp & Flax Manuf. Co.* 3 Sumner, 530, the question, whether goods, that had been ordered from England, had been furnished in a reasonable time, was submitted to the jury. Story, J. remarked : " The whole question now before the jury is whether these articles were manufactured and offered to be delivered within a reasonable time. That reasonable time must be judged of by all the circumstances, and, of course, with all the natural calculations, which might fairly arise from the distance of the countries, the season of the year, the state of the markets, and orders, the pressure of business, and the common disappointments and retardations incident to the manufacture of any new article." See

also *Scott* v. *Lifford,* 1 Campb. 248; *Pitt* v. *Shew,* 4 B. & Ald. 206; *Nelson* v. *Patrick,* 2 Car. & K. 641; *Ellis* v. *Thompson,* 3 M. & W. 457; *Douglass Axe Manuf. Co.* v. *Gardner,* 10 Cush. 88.

3. The court cannot adopt the view taken by the defendants' counsel, as to the legal effect of the twenty-third article of their by-laws on the plaintiff's right to maintain this action on his policy. That by-law, as it seems to us, only suspends the right of action on the policy during the time within which the defendants have a right to rebuild, repair or replace the property lost or damaged, instead of paying the loss in money.

4. We are of opinion that the judge erred in excluding the testimony of Slocomb. A new trial must therefore be granted to the defendants. But as the excluded testimony related solely to the amount of damages, the new trial will be confined to that point.