## WARD v. COCHRAN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 110. Argued and submitted November 23, 24, 1893. — Decided December 18, 1893.

An express order of court during the judgment term, continuing a cause for the purpose of settling, allowing, signing, and filing a bill of exceptions, and the settlement and allowance and filing of the bill, during the terms to which the continuance was made, takes the exceptions out of the operation of the general rule that the power to reduce exceptions to form and have them signed and filed is, under ordinary circumstances, confined to the term at which the judgment is rendered.

A bill of exceptions which, in so far as it relates to the charge, specifies with distinctness the parts excepted to, and the legal propositions to which exceptions are taken, is sufficient.

A defendant in ejectment who relies on adverse possession during the statutory period as a defence must show actual possession — not constructive — and an exclusive possession — not a possession in participation with the owner, or others.

When a special verdict is rendered, all the facts essential to entitle a party to a judgment must be found.

A judgment rendered on a special verdict failing to find all the essential facts is erroneous; and consequently a special verdict in an action of ejectment, which finds that the grantor of the defendant entered into possession of the land in controversy under a claim of ownership and that he remained in the open, continued, notorious, and adverse possession thereof for the period of sixteen years, when he sold and transferred the same to the defendant, who remained in open, continuous, notorious, and adverse possession of the same under claim of ownership down to the present time, is defective in that it does not find that the adverse possession was actual and exclusive.

THIS was an action of ejectment brought at the November term, 1887, in the Circuit Court of the United States for the

District of Nebraska, by Seth E. Ward, a citizen of the State of Missouri, against Elmer G. Cochran, a citizen of the State of Nebraska, to recover the possession of twenty acres of land situated in the suburbs of the city of Omaha, and described as the west one-half of the northeast one-quarter of section 4, township 15 north, range 13 east, in Douglas County, Nebraska.

In pursuance of the practice in that State, under which two trials in ejectment are necessary to a final determination of a question of title, a trial was had before a judge, without a jury, and a judgment was entered in favor of the defendant. This judgment was forthwith, on motion of the plaintiff, set aside and a new trial was awarded.

At this trial the record discloses that the plaintiff sustained his side of the issue by putting in evidence a chain of title from the United States to himself, consisting of a patent of the United States to Alexander R. McCandlers, dated March 13, 1861, for a tract of land, including the piece in dispute; a deed of Alexander R. McCandlers to Michael Thompson, dated May, 2, 1861, for the same tract; a deed of Michael Thompson and wife to Edward B. Taylor, dated July 5, 1862, for said tract; a mortgage of Edward B. Taylor to Ward, the plaintiff, dated July 28, 1871, on the twenty-acre tract in controversy, to secure the payment of certain promissory notes; the record of proceedings in suit by Ward, the plaintiff, against the heirs and legal representatives of Edward B. Taylor, who had died in 1872, to foreclose said mortgage, and a sheriff's deed, under decree in said suit, to Ward, the plaintiff, dated July 11, 1877; a deed of Edward A. Taylor (son and one of the heirs of Edward B. Taylor, and the only heir who had not been made a party to the foreclosure suit) to Ward, the plaintiff, dated June 25, 1885, for the twenty-acre tract in dispute. It was admitted that the value of the land was $20,000 at the time of the bringing of the suit.

The defendant adduced evidence tending to show that one John Flanagan had entered on the tract in dispute in 1868, under a parol sale of said tract to him by Edward B. Taylor; that Flanagan had continued in possession of the tract until 1885, when, on November 25 of that year, Flanagan and wife

conveyed the tract to the defendant by deed of that date, who entered into possession.

On December 9, 1889, the jury rendered a special verdict, in the following words and figures:

"We, the jury impanelled and sworn to try the issues joined in the above-entitled cause, do find and say that one John Flanagan, in the year 1868, entered into the possession of the west one-half of the northeast quarter of the southwest quarter of section 4, in township 15 north, of range 13th east of the 6th principal meridian, in Douglas County, Nebraska, being the land in controversy in this case, under a claim of ownership thereto, and that he remained in the open, continued, notorious, and adverse possession thereof for the period of sixteen (16) years thereafter and until he sold and transferred the same to the defendant in this case.

"We further find that said John Flanagan and Julia, his wife, by good and lawful deed of conveyance, conveyed said premises to the defendant in this suit in 1885, and surrendered his possession to this defendant, and that said defendant has remained in the open, continuous, notorious, and adverse possession of the same under claim of ownership down to the present time. We therefore find that at the commencement of this suit the defendant was the owner of and entitled to the possession of the said premises, and upon the issues joined in this case we find for said defendant."

On December 9, 1887, the plaintiff, by his counsel, moved for a new trial for reasons filed, and, on the same day, moved the court for judgment in his behalf notwithstanding the verdict.

On December 5, 1889, the motion for a new trial was overruled, and judgment was entered in favor of the defendant in pursuance of the verdict; and to said judgment a writ of error to this court was sued out and allowed.

*Mr. Hugh C. Ward* and *Mr. James Hagerman* for plaintiff in error.

*Mr. John M. Thurston* and *Mr. W. J. Connell,* for defendant in error, submitted on their brief:

I. This case was tried before a jury in the court below and a verdict rendered on the 9th day of December, 1887. Thereafter a motion for a new trial was held under advisement until the 5th day of December, 1889, of the November term of said court, when judgment was entered upon the verdict. It therefore appears that no bill of exceptions was prepared or presented at the trial term, and no order was asked with respect thereto by the plaintiff in error until the 26th day of December, 1889, just prior to the end of the November term, when the court entered an order without the consent of the defendant in error, giving the plaintiff until the first day of February, 1890, in which to present a bill of exceptions; a time beyond the said November term, at which the judgment was entered. We submit that it was not within the power of the court to make such an order; that the same was made without any notice to the defendant; and the bill of exceptions not having been signed and allowed at either the trial or the judgment term — and having in fact been signed and allowed on the first day of March, 1890, a date long subsequent to the suing out of the writ of error and the service of the citation in the case — the said bill of exceptions was not in time to preserve of record the alleged errors complained of. *Mühler* v. *Ehlers*, 91 U. S. 249.

II. The bill of exceptions in this case has been prepared in disregard of the rules of the court. *Hickman* v. *Jones*, 9 Wall. 197, 199, is in point where the court said: "We have to complain in this case, as we do frequently, of the manner in which the bill of exceptions has been prepared. It contains all the evidence adduced on both sides, and the entire charge of the court. This is a direct violation of the rule." The case at bar is similar to *Hanna* v. *Maas*, 122 U. S. 24.

III. The decisions of the highest court of a State with respect to title by adverse possession, when there are such, establish the rule of property in that State. *Harpending* v. *Reformed Dutch Church*, 16 Pet. 455. In the absence of state decisions to the contrary, it is the rule of this court, established by an unbroken line of decisions, that adverse possession of real property continued for the statutory period

within which an action of dispossession could be commenced, ripens into a perfect and indefeasible title in fee simple.

In *Harpending* v. *Reformed Dutch Church, ubi supra*, it is laid down (following the head note) that, "After the elapse of twenty years from the commencement of adverse possession of the property claimed, the defendants had a title as undoubted as if they had produced a deed in fee simple from the true owners of that date; and all inquiry into their title or its incidents was effectually cut off."

This rule has been followed by this court in many other cases, but we cite only one, *Bicknell* v. *Comstock*, 113 U. S. 149, 152, in which Mr. Justice Miller, delivering the opinion of the court, says: "This court has more than once held that the lapse of time provided by the statutes makes a perfect title.

"In *Leffingwell* v. *Warren*, 2 Black, 599, it is said that 'the lapse of time limited by such statutes not only bars the remedy, but it extinguishes the right and vests a perfect title in the adverse holder.'

"And this doctrine is repeated in *Croxall* v. *Shererd*, 5 Wall. 268, 289; and in *Dickerson* v. *Colgrove*, 100 U. S. 578, 583."

The leading case in the State of Nebraska on the question of title by adverse possession is *Horbach* v. *Miller*, 4 Nebraska, 31. The later decisions on that question, citing and approving that case, are: *Gatling* v. *Lane*, 17 Nebraska, 77; *Stettnischer* v. *Lamb*, 18 Nebraska, 619; *Parker* v. *Starr*, 21 Nebraska, 680; *Gue* v. *Jones*, 25 Nebraska, 634; *Tourtelotte* v. *Pierce*, 27 Nebraska, 57; *Fitzgerald* v. *Brewster*, 31 Nebraska, 51; *Meyer* v. *Lincoln*, 33 Nebraska, 56. The following extract from *Meyer* v. *Lincoln* clearly states the rule established by these decisions: "By numerous decisions of this court it has been held that adverse possession of real estate, as owner, for ten years, gives a perfect title to the occupant. *Horbach* v. *Miller*, 4 Nebraska, 31, 47; *Gatling* v. *Lane*, 17 Nebraska, 77, 79; *Haywood* v. *Thomas*, 17 Nebraska, 237, 240; *Tex* v. *Pflug*, 24 Nebraska, 666, 669; *Levy* v. *Yerga*, 25 Nebraska, 764; *Obernalte* v. *Edgar*, 28 Nebraska, 70; *Crawford* v. *Galloway*,

29 Nebraska, 261; *Peterson* v. *Townsend*, 30 Nebraska, 373, 376; *Alexander* v. *Wilcox*, 30 Nebraska, 793, 795."

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

Objection is made that the bills of exception were not allowed and signed either at the trial or the judgment term, and the case of *Müller* v. *Ehlers*, 91 U. S. 249, is cited to show that we cannot consider them for that reason.

From the record, it does indeed appear that the bills of exception were not allowed and signed during the term at which the judgment was rendered, but it also appears that, at said term, an order was entered stating that, inasmuch as the bills of exception could not be completed at that term, the time for preparing and presenting them was extended till February 1, 1890, at which time bills of exception might be allowed and signed with the same force and effect as if said action had been had within the usual time; and it also appears that on January 18, 1890, plaintiff's counsel served defendant's counsel with a copy of the bills of exception proposed, with notice that they would be presented for the judge's consideration on January 27, 1890. On that day, defendant's counsel did not appear, and thereupon the court entered an order, reciting the foregoing facts, and directing that the bills of exception be filed with the clerk of the court, and that defendant should have thirty days in which to file suggestions of amendment thereto, and continuing the cause till the further order of the court for the purpose of settling, allowing, and signing the bills; and it further appears that on March 1, 1890, the bills of exception were finally signed by the judge and filed. The record also discloses that the defendant protested against the action of the court in extending the time and in allowing and signing the bill of exceptions after the expiration of the term at which the judgment was rendered.

In the case of *Müller* v. *Ehlers*, relied on by the defendant in error, this court did hold that because the bill of exceptions had not been signed at or during the term at which the judg-

ment was rendered, it could not be considered, and expressed itself as follows: "As early as *Walton* v. *United States*, 9 Wheat. 651, the power to reduce exceptions taken at the trial to form and to have them signed and filed was, under ordinary circumstances, confined to a time not later than the term at which the judgment was rendered. This, we think, is the true rule, and one to which there should be no exceptions, without an express order of the court during the term or consent of the parties save under very extraordinary circumstances. Here we find no order of the court, no consent of the parties, and no such circumstances as will justify a departure from the rule. A judge cannot act judicially upon the rights of parties, after the parties in due course of proceedings have both in law and in fact been dismissed from the court."

As we have seen, the present record discloses "an express order of the court during the judgment term, continuing the cause for the purpose of settling, allowing, signing, and filing the bills of exception," and this case is thus brought within the ruling in *Müller* v. *Ehlers*.

Our most recent utterance on this subject was in *Morse* v. *Anderson, ante,* 158, where it was held that this court would not review bills of exception signed after the time fixed by a special order of the court had expired.

As this record discloses that the exceptions relied on were taken at the trial, and that the delay was in reliance on an express order of the court, postponing the act of allowing and signing the bills, we think that we are not precluded from a consideration of the errors assigned.

A further preliminary objection is urged to the form of the bill of exceptions, which is said to be a mere transcript of the entire testimony and of the charge, and the case of *Hanna* v. *Maas,* 122 U. S. 24, is cited.

In that case it was held that when a bill of exceptions is so framed as not to present any question of law in a form to be revised by this court, the judgment must be affirmed, but the facts of the case were thus stated: "This bill of exceptions has been framed and allowed in disregard of the settled rules of law upon the subject. No ruling upon evidence is

open to revision, because none appear to have been excepted
to; and the overruling of the motion for a new trial is not a
subject of exception.   The bill of exceptions, instead of stating
distinctly, as required by law and by the 4th Rule of this
court, those matters of law in the charge which are excepted
to, and those only, does not contain any part of the charge, or
any exception to it, and undertakes to supply the want by
referring to exhibits annexed, containing all the evidence
introduced at the trial, the whole charge to the jury, and
notes of a desultory conversation which followed between the
judge and the counsel on both sides, leaving it to this court to
pick out from those notes, if possible, a sufficient statement of
some ruling in matter of law."

The present record presents a very different condition of
facts, as the bill of exceptions, in so far as it relates to the
charge, specifies with distinctness the parts of the charge
excepted to and the legal propositions to which exceptions are
taken.   The view we take of the case does not compel us to
consider the objections taken to the admission or rejection of
evidence, and we are therefore not called upon to determine
whether such objections are properly presented for review.

This was an action of ejectment for the recovery of a tract
of land of which the boundaries and situation were not
matters of dispute.   It was conceded that both parties claimed
to derive title from one E. B. Taylor, and that the plaintiff's
evidence sufficed to entitle him to recover, unless such right
of recovery was overcome by the defendant's claim of an
adverse possession of a character and duration sufficient, under
the laws of Nebraska, to create a good title.

The record discloses that the judge instructed the jury to
make a finding of special facts; that the jury did so; that the
plaintiff moved for judgment in his favor upon the verdict;
that the defendant did likewise; and that the court sustained
the defendant's motion and entered judgment in his favor.

The following are the statutory provisions of Nebraska
relating to verdicts:

"SEC. 292. The verdict of a jury is either general or
special.   A general verdict is that by which they pronounce

generally upon all or any of the issues, either in favor of the plaintiff or defendant. A special verdict is that by which the jury finds the facts only. It must present the facts as established by the evidence, and not the evidence to prove them, and they must be so presented as that nothing remains to the court but to draw from them conclusions of law.

" Sec. 293. In every action for the recovery of money only, or specific real property, the jury, in their discretion, may render a general or special verdict. In all other cases the court may direct the jury to find a special verdict in writing, upon all or any of the issues; and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact to be stated in writing, and may direct a written finding thereon. The special verdict or finding must be filed with the clerk and entered on the journal.

" Sec. 294. When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly." Compiled Statutes of Nebraska, 1887. Code of Civil Procedure.

The action of the court below in rendering judgment on the special verdict in favor of the defendant forms the subject of the first assignment of error. The plaintiff's contention is that the special verdict did not warrant a judgment in favor of the defendant, because it did not find that the possession on which the defendant relied was actual and exclusive.

No state statute has been referred to as regulating or defining title by adverse possession, and, indeed, it is stated in the brief of defendant in error that there is no such statute; but there is a statutory provision that an action for the recovery of the title or possession of lands, tenements, or hereditaments can only be brought within ten years after the cause of such action shall have accrued.

Our investigation, therefore, into the sufficiency of the special verdict must be controlled by the principles established, in this branch of the law, by the decisions of the courts, particularly those of the Supreme Court of the State of Nebraska and of this court.

In *French* v. *Pearce*, 8 Connecticut, 439, 440, it was said that "it is the fact of exclusive occupancy, using and enjoying the land as his own, in hostility to the true owner, for the full statutory period, which enables the occupant to acquire an absolute right to the land.

In *Sparrow* v. *Hovey*, 44 Michigan, 63, a refusal of the court to charge that, when the title is claimed by an adverse posses-· sion, it should appear that the possession had been "actual, continued, visible, notorious, distinct, and hostile," but merely charging the jury that the possession "must be actual, continued, and visible," was held erroneous. In Pennsylvania, it has been repeatedly held that, to give a title under the statute of limitations, the possession must be "actual, visible, exclusive, notorious, and uninterrupted." *Johnston* v. *Irwin*, 3 S. & R. 291; *Mercer* v. *Watson*, 1 Watts, 330, 338; *Overfield* v. *Christy*, 7 S. & R. 173.

In *Jackson* v. *Berner*, 48 Illinois, 203, it was held that an adverse possession sufficient to defeat the legal title, where there is no paper title, must be hostile in its inception, and is not to be made out by inference, but by clear and positive proof; and further, that the possession must be such as to show clearly that the party claims the land as his own, openly and exclusively.

In *Foulk* v. *Bond*, 12 Vroom, (41 N. J. Law,) 527, 545, it was said: "The principles on which the doctrine of title by adverse possession rests are well settled. The possession must be actual and exclusive, adverse and hostile, visible and notorious, continued and uninterrupted."

It was held in *Cook* v. *Babcock*, 11 Cush. 206, 209, that "when a party claims by a disseizin ripened into a good title by the lapse of time as against the legal owner, he must show an actual, open, exclusive, and adverse possession of the land. All these elements are essential to be proved, and failure to establish any one of them is fatal to the validity of the claim."

In *Armstrong* v. *Morrill*, 14 Wall. 120, 145, this court, speaking through Mr. Justice Clifford, said: "It is well settled law that the possession, in order that it may bar the recovery, must

be continuous and uninterrupted as well as open, notorious, actual, exclusive, and adverse. Such a possession, it is conceded, if continued without interruption for the whole period which is prescribed by the statute for the enforcement of the right of entry, is evidence of a fee, and bars the right of recovery. Independently of positive statute law, such a possession affords a presumption that all the claimants to the land acquiesce in the claim so evidenced." *Hogan* v. *Kurtz,* 94 U. S. 773, is to the same effect.

The authorities in Nebraska are substantially to the same effect on questions of title by adverse possession.

A leading case is *Horbach* v. *Miller,* 4 Nebraska, 31, 46, 48, in which it was said that "the elements of all title are possession, the right of possession, and the right of property; hence, if the adverse occupant has maintained an exclusive adverse possession for the full extent of the statutory limit, the statute then vests him with the right of property, which carries with it the right of possession, and therefore the title becomes in him. . . . The submission of the case to the jury correctly was that if they believed, from the evidence, that the plaintiff in error, for ten years next before the commencement of the action, was in the actual, continued, and notorious possession of the land in controversy, claiming the same as his own against all persons, they must find for the plaintiff in error." In *Gatling* v. *Lane,* 17 Nebraska, 77, 82, the language used was: "A person who enters upon the land of another with the intention of occupying the same as his own, and carries that intention into effect by open, notorious, exclusive adverse possession for ten years, thereby disseizes the owner." In *Parker* v. *Starr,* 21 Nebraska, 680, 683, a recovery was sustained where the testimony clearly showed that "the defendant and those under whom he claims have been in the open, notorious, and exclusive possession for ten years next before the suit was brought." In *Ballard* v. *Hansen,* 33 Nebraska, 861, 864, the following instructions, which had been given in the trial court, were approved by the Supreme Court: "The jury are instructed that adverse possession, as relied upon by the plaintiffs in this action, is the open, actual, exclusive, notorious, and hostile

occupancy of the land, and claim of right, with the intention to hold it as against the true owner and all other parties; such occupancy, if continuous for ten years, ripens into a perfect title, after which it is immaterial whether the possession be continued or not." "If you find and believe, from a preponderance of the testimony in this case, that the plaintiff was in the actual, open, notorious, exclusive, continuous possession of any of the lots in controversy for ten years, claiming to own and hold them as against all others, as to such lots he is entitled to recover."

Tested by these definitions, it is obvious that if the title relied on in this case, by the defendant below, was fully described and characterized by the special verdict, it was defective in two very essential particulars, in that it was not found to have been actual and exclusive. A possession not actual, but constructive; not exclusive, but in participation with the owner or others, falls very far short of that kind of adverse possession which deprives the true owner of his title

Where a special verdict is rendered all the facts essential to entitle a party to a judgment must be found, and a judgment rendered on a special verdict failing to find all the essential facts is erroneous.

In *Prentice* v. *Zane's Administrator*, 8 How. 470, 483, it was said: "In the *Chesapeake Ins. Co.* v. *Stark*, 6 Cranch, 268, and *Barnes* v. *Williams*, 11 Wheat. 415, this court has decided that where, in a special verdict, the essential facts are not distinctly found by the jury, although there is sufficient evidence to establish them, the court will not render a judgment upon such an imperfect special verdict, but will remand the cause to the court below with directions to award a *venire de novo*."

In *Hodges* v. *Easton*, 106 U. S. 408, where it was contended that an imperfect special verdict might be pieced out and the missing facts be supplied by reference to the other parts of the record, the same conclusion was reached, and the court below was directed to award a new trial.

In the present case, even if the verdict were regarded as a general one, and therefore entitled to be supported by the

presumption that sufficient facts existed to sustain it, yet we should feel constrained to reverse the judgment, because of the errors complained of in the eighth, ninth, and tenth assignments.

The plaintiff's counsel requested the court to charge the jury that, in order that possession of land may overcome the title of the true owner, "there must be a concurrence of the following elements: Such possession must be actual, hostile, exclusive, open, notorious, and continuous for the whole period of ten years. Every element in this enumeration is absolutely essential, and if one of these elements does not exist there can be no adverse title acquired;" and the court did so charge; but the court then proceeded to say that, after having disposed of the written instructions, "I propose to go outside of what is there stated and give one on my own motion." Those voluntary instructions given by the learned judge, though correct in most respects, were imperfect in the very particulars in which we have found the special verdict defective. The jury were not told that, to make out the defence, the possession, in addition to certain other features properly specified, must be shown to have been actual and exclusive. This clearly appears in the final instruction, which was in the following terms:

"But if you take the other view and find that defendant has a good title and that he is entitled to recover, then I think you ought to go further and find the fact that he entered into the possession of the premises at a certain time, or as near as you can fix it from the testimony; that he occupied the premises; that he continued in possession for more than ten years prior to the commencement of this suit, which was December 4, 1886. You ought to find, if you can, from the testimony about the time that he went into possession, whether he continued in possession, and whether his possession was adverse, continuous, and hostile prior to the commencement of this suit, or whether Flanagan and his grantees, defendants in this suit, continued in possession that long, it is the same as if Flanagan was in possession that long himself.

"If you find for the defendant, find when he took posses-

sion, if you can, and, as near as you can, how long he remained in possession before the commencement of this suit.  Then your verdict will be, in addition to that, ' We therefore find that at the commencement of this suit the defendant was the owner and entitled to the immediate possession of the premises in dispute.'  That disposes of the whole controversy as far as the verdict of the jury is concerned."

Nor do we think that this is one of those cases in which erroneous or insufficient instructions in one part of a charge are corrected or supplied by unobjectionable instructions, on the same questions, appearing in another part.  It is evident that the attention of the jury must have been withdrawn from the instructions formally given, as requested, to those announced by the judge, as given on his own motion, and it seems evident that this action of the court misguided the jury, and led them to overlook essential questions involved in the issue they were trying.  *Smiths* v. *Shoemaker*, 17 Wall. 630; *Moores* v. *National Bank*, 104 U. S. 625; *Gilman* v. *Higley*, 110 U. S. 47; *Vicksburg & Meridian Railroad Co.* v. *O'Brien*, 119 U. S. 103.

Whether, then, we regard the verdict as a special one, not containing findings sufficient to support the judgment, or as a general one, rendered in pursuance of imperfect instructions, we reach the conclusion that the judgment of the court below must be ·

*Reversed and the cause remanded, with instruction to award a venire de novo.*