## TUBULAR RIVET & STUD CO. v. EXETER BOOT & SHOE CO.

(Circuit Court of Appeals, First Circuit. February 12, 1908.)

No. 692.

1. WRIT OF ERROR—OBJECTIONS IN TRIAL COURT—PLEADING—VARIANCE.

Where, in an action for damages for inducing another to break a contract between plaintiff and W. & Co., the complaint throughout alleged that W. & Co. were the principals, and were induced by defendant not to furnish certain machines to plaintiff, while the proof showed that W. & Co. in selling the machines acted as agents for the H. Co., and that the latter was the person induced not to fill plaintiff's order, such variance could have been corrected by amendment; and where the variance was not taken advantage of at a long trial, except by defendant's requests for instructions, there was ground on which the court in its discretion might have held that the variance had been waived at the time such requests were made, and the court's action in disregarding it will not be reviewed on a writ of error.

2. TORTS—PLEADING—ISSUES.

Where a declaration was expressly limited to plaintiff's right to recover damages sustained by defendant's act in inducing the seller of certain machines to refuse to deliver the same to plaintiff, in accordance with the contract, the complaint did not present any issue under the Sherman trust act, though there was evidence of an agreement between manufacturers of such machines, including defendant and the seller, to protect each other, and for each to notify the other if a man did not pay his bills, the person notified being then at liberty to sell him goods or not, according to his own judgment.

3. SAME—INDUCING BREACH OF CONTRACT.

Where defendant corporation induced another to break a contract to furnish certain machines, plaintiff was entitled to recover from defendant damages sustained thereby, without proof that defendant was actuated by actual malice or ill will.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Torts, § 13.]

4. CORPORATIONS—ACTS OF OFFICERS—RATIFICATION—QUESTION FOR JURY.

In an action against a corporation for inducing another to break a contract to furnish plaintiff certain machines, evidence *held* to require submission to the jury of the question whether defendant corporation approved, acquiesced in, and adopted its officer's construction of a letter written to the seller which was claimed to have induced a violation of the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 1738.]

5. COURTS—FEDERAL PRACTICE—BILL OF EXCEPTIONS—SETTING FORTH EXCEPTIONS.

A bill of exceptions referred to alleged errors in refusing to comply with certain requests to charge, by stating "the court refused to give the instruction requested, except so far as the instructions contained in the extract from the charge set out totidem verbis in connection with a request numbered," etc., included it. One of such references contained an extract from the charge, covering more than two printed pages. *Held.* that the practice in the federal courts did not permit the setting out of exceptions in such manner.

6. DAMAGES—INDUCING BREACH OF CONTRACT—DAMAGES AVOIDABLE.

In an action to recover damages for inducing a third person not to comply with a contract to furnish plaintiff certain machines, an instruction that defendant was not liable for damages that would have been avoided by plaintiff's using defendant's machines was properly refused, defendant having no right to shut plaintiff out of every other market, and force it to purchase machines from defendant.

7. WRIT OF ERROR—REVIEW.

Where on a writ of error there were numerous requests for instructions, and many alleged errors assigned, the Court of Appeals will not develop topics not specially brought to its attention at the bar.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error. §§ 4256–4261.]

In Error to the Circuit Court of the United States for the District of New Hampshire.

Louis D. Brandeis (William H. Dunbar, Brandeis, Dunbar & Nutter, and Streeter & Hollis, on the brief), for plaintiff in error.

Henry F. Hollis (Edwin G. Eastman, on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

PUTNAM, Circuit Judge. This was a suit at common law in the Circuit Court for the District of New Hampshire, in which there were a verdict and judgment for the plaintiff in that court; whereupon the defendant sued out this writ of error. It is convenient to speak throughout of the plaintiff below as the plaintiff and of the defendant below as the defendant. After various amendments the plaintiff's cause of action settled down to what appears by the following amended count:

"In a plea of the case for that the said plaintiffs at said Exeter before and at the time of the committing of the several grievances by the defendants as hereinafter mentioned were and from thence hitherto have been engaged in the manufacture and sale of boots and shoes and have hitherto made and ought and would have continued to make large profits in their said business, but for the said several grievances committed by the said defendants, and they further say that in the prosecution of their said business it was necessary for them to affix and attach certain hooks to and upon the boots and shoes so manufactured by them as aforesaid, and also to have and use certain machines for affixing and attaching said hooks to said boots and shoes, and the said plaintiffs further say that on the ninth day of May, 1900, they purchased of Frank W. Whitcher & Company one hundred thousand of said hooks for the sum of sixty-seven dollars, said sum to be therefor paid by the plaintiffs to the said Frank W. Whitcher & Company, and the said Frank W. Whitcher

& Company then and there, and in consideration of the purchase by and upon the part of the plaintiffs as aforesaid, promised the plaintiffs to immediately deliver to them at said Exeter said hooks, and as a part of the agreement and consideration aforesaid to loan and deliver to the plaintiffs at the same time and place, together with said hooks, two of the aforesaid machines for use in affixing and fastening said hooks to and upon boots and shoes manufactured and to be manufactured by the plaintiffs' at Exeter aforesaid, and the plaintiffs aver that they always from the said ninth day of May hitherto were ready and willing to accept and pay for the said hooks upon delivery of the same together with said machines according to the contract and agreement aforesaid and that the said Frank W. Whitcher & Company were ready and willing to deliver said hooks and machines in accordance with their said contract and agreement and did deliver the said hooks, all which the said defendants then and there well knew. Yet the said defendants on said ninth day of May at Exeter aforesaid contriving to injure the plaintiffs did unlawfully, fraudulently, maliciously and without justifiable cause induce and cause the said Frank W. Whitcher & Company not to deliver said machines to the plaintiffs in accordance with their said agreement so to do, by means whereof they, the said defendants, then and there intended to and did unlawfully, fraudulently, maliciously, and without justifiable cause molest, hinder and obstruct the said plaintiffs in their said business and trade relations, and by reason of the said molestation, hindrance and obstruction by and on the part of the said defendants in the manner and by the means aforesaid the said plaintiffs were deprived of the use and profit of their said business and their plant and factory employed in their said business, and the product of their said business was greatly reduced, so that they lost large profits that would have accrued to them from their said business, plant and factory, and from the manufacture and sale of boots and shoes, and were put to great expense and trouble in attempting to procure other machines for use in fastening hooks to and upon boots and shoes."

There is no question that the plaintiff was engaged in the manufacture and sale of boots and shoes as shown in the declaration, and that it was necessary in its business for it to purchase hooks to be attached for the purposes and in the manner stated therein, and to have and use certain machines in attaching the hooks. Neither is there any question that the plaintiff, on May 9th, purchased hooks of Frank W. Whitcher & Co., as further stated, nor that Frank W. Whitcher & Co., as a part of the trade and in consideration of the purchase, negotiated with the plaintiff for the loan and delivery with the hooks of two machines for use in affixing them, nor that the plaintiff was always ready to perform on its part, and needed the machines as well as the hooks. Frank W. Whitcher & Co. did not own machines, and did not contract in their own behalf to furnish them, but, as to this part of the transaction, Whitcher testified that he took orders subject to acceptance by the Halkyard Manufacturing Company. Whitcher shipped the hooks, and sent the order for the machines to that concern. The Halkyard Manufacturing Company accepted the order, because it immediately shipped one machine; although, for reasons which will appear, it never reached the plaintiff. However, there can be no question that the Halkyard Manufacturing Company went so far as to ratify the contract of Frank W. Whitcher & Co., nor that there was a complete contract, binding on all three parties, namely, the plaintiff, Frank W. Whitcher & Co. and the Halkyard Manufacturing Company, valid from the standpoint of the statute of frauds, and from all other standpoints.

Neither is there any doubt that the contract would have been carried out except for the act of the defendant, that is, the Tubular Rivet & Stud Company, in that it had sent the following letter to the Halkyard Manufacturing Company on April 25, 1900, thus before the trade was made between Whitcher and the plaintiff:

"Apr. 25, 1900.

"Messrs. Halkyard Mfg. Co.,
    "Providence, R. I.

"Gentlemen: In case you should receive an order from the Exeter Boot & Shoe Co., or Gale Bros., will you kindly let us know before making shipment? A question has arisen regarding a deduction for freight, on one case of hooks, and we have been trying for the past two or three weeks to have the matter adjusted.

"Yours very truly,                    Tubular Rivet & Stud Co."

To this reply came as follows:

"Providence, R. I., April 26, 1900.

"Tubular Rivet & Stud Co.,
    "Gentlemen: Yours of April 25th at hand. We will notify you at once should we receive an order from the Exeter Boot & Shoe Co. or Gale Bros.
    "Yours truly,                    Halkyard Mfg. Co."

After the trade was made between Frank W. Whitcher & Co. and the plaintiff, these letters were apparently brought to the attention of the manager of the Halkyard Manufacturing Company, and the machine which had been shipped was immediately recalled by him, as already stated. Notwithstanding this, the letter did not in terms ask the breach of any contract, and it might not have been the causa causans of the violation of the trade within the meaning of the law, but only the sine qua non (Niver Coal Co. v. Cheronea S. S. Co., 142 Fed. 402, 409, 73 C. C. A. 502); and the main question is whether such was the fact.

In speaking in positive terms with reference to some matters we have stated, we do not intend to be understood as saying that the court would be authorized to conclusively draw the facts from the record; and we mean only that, so far as this writ of error is concerned, the question on the main proposition submitted to us is whether the plaintiff was entitled to go to the jury, so that we necessarily speak for the most part from its standpoint.

The defendant urges on us a question of variance. It will be observed that the declaration takes no notice of the Halkyard Manufacturing Company. On the other hand, it throughout alleges by implication of law that Frank W. Whitcher & Co. were the principals, and that they, Frank W. Whitcher & Co., were induced by the defendant not to deliver the machine; but, while this variance, if promptly availed of, might have been fatal at strict law, it was very far from reaching any question touching the merits, and, if that point had been seasonably raised at the trial, it could have been met by amendment. A variance of this kind is, of course, easily waived. The trial evidently was a long one, and, if the defendant relied on a variance of this character, it would naturally have brought it to the attention of the court promptly. We find no indication of any attempt of that character during the trial. It would have come in very naturally,

by an objection to the proof, on the first attempt to show that a trade for the machines was made by Whitcher in behalf of the Halkyard Manufacturing Company. It is possible that the point was intended to be covered by the defendant's requests for instructions; but this is not clear. Even if the requests did cover it, it is quite apparent that the Circuit Court, from its observation of the proceedings through a long trial, may have had sufficient reason to decide that the variance was impliedly waived, even if not expressly so, with the result that in its discretion, it had a right to refuse a request, or, in its further discretion, to permit the plaintiff to amend. Therefore, under the circumstances, we cannot properly revise the action of that court for this account.

The plaintiff, previous to April 25, 1900, had been the customer of the defendant, purchasing hooks from the latter, and using the latter's machines. A dispute arose between them in regard to a question of 25 cents freight, the same referred to in the letter of April 25th; and it was in consequence of this dispute that the plaintiff applied to Frank W. Whitcher & Co. as we have stated. We are not aware whether or not the record shows the number of manufacturers of hooks, but it appears that there were only three from whom the machines required to set the hooks could have been obtained. In Halkyard's testimony he made the following statement, in which the word "they" refers to the defendant here:

"They being manufacturers of the same line of goods, we had a verbal agreement that we would protect each other as far as our trade was concerned; that if a man did not pay his bills, we would notify each other, and then we were at liberty to use our own judgment whether we would sell him goods or not."

That is followed immediately by the following:

"Q. Then you were notified by the Tubular Rivet & Stud Company that there was an unpaid bill due them from the Exeter Boot & Shoe Company, and in consequence of that you declined to deliver the machine to the company; is that correct? A. Yes, sir."

The parties have submitted to us some propositions with reference to trade relations and the Sherman trust act. Clearly, under the pleadings, the Sherman trust act has nothing whatever to do with the case; and, also, the same is true with reference to any question of general trade relations. The declaration is narrow, and expressly limited to a complaint that the defendant induced Whitcher, or Halkyard, whichever it should be, not to deliver the machines in accordance with the trade made with the plaintiff. There is a sequence in the declaration referring to trade relations; but this is simply in the way of stating a conclusion of law, and the expression is not only limited by what precedes it, but by what follows it, to the effect that the molestation, and so forth, was "in the manner and by the means aforesaid," which has regard, of course, to the limited statement to which we have referred. There is no doubt that, under some circumstances, and clearly so with reference to a libel, any stranger interfering with the trade relations of others, as the expression is commonly understood, may be liable in damages, although

there is no legal obligation to continue such relations; but we are compelled to hold that the plaintiff's case rests entirely on the claim that it had made a certain contract with a third party for certain hooks and machines, binding in law, and that the defendant interfered, and induced the third party not to perform it.

The common law is very vigorous in protecting from interference the accomplishment of the relations which it favors, whether those of husband and wife, parent and child, guardian and ward, the manufacturer and persons employed by him, the relations of domestic service, and generally all the relations which have pecuniary value. It begins with authorizing the recovery of damages for the publication of libelous statements affecting pecuniarily a man's trade or profession, and it covers the entire field from that point to a case like the present, where a third person is charged with attempting, gratuitously or for a purpose, to induce one party or the other to withdraw from a binding contract. It also goes so far that it punishes interference with relations of pecuniary value though subject to be terminated at will by either party, having, however, regard to peculiar circumstances and motives which may justify or excuse the interference; among others, the desire of justifiable gain as the result thereof. Such was the case in McGuire v. Gerstley, 204 U. S. 489, 503, 27 Sup. Ct. 332, 51 L. Ed. 581, relied on by the defendant, where the purpose was to induce one of the parties to a partnership, terminable at will, to enter the employment of the person interfering. But where there is either a binding contract for employment for a specific time or a valid contract for the sale and delivery of goods, or other valid executory contract, the interference of a third party lays a direct basis for a suit, precisely as with any other direct blow knowingly struck against any property interest which the law protects. There are exceptions of an extreme character. For example, the parent may undoubtedly, under some circumstances, interfere for the protection of his child, even with regard to an existing binding agreement. Also, in the present case, assuming that there was an honorable arrangement between the defendant and other manufacturers or dealers in the same line for mutual protection against insolvent customers, and assuming that the defendant had had knowledge of the insolvency of the plaintiff, if there had been insolvency the knowledge of which the Halkyard Manufacturing Company did not possess, it would probably have been justifiable for the defendant to have given such prompt information as would have enabled a stoppage of the machines in transitu, as the law permits. Here, however, there was no such condition. The solvency of the plaintiff was not questioned, and the issue between it and the defendant was about a matter so puerile that the law would not take notice of it in this connection, or, if it did take notice, it would do so only for the purpose of establishing an angry and inexcusable purpose on the part of the defendant, if it had been necessary to have established any special purpose whatever.

To state more fully our propositions of law, we regard them as correctly set forth in Pollock's Law of Torts (6th Ed.) 316, and se-

·quence. The conclusion which the author reaches, that, in order to sustain an action like this at bar, it is not necessary to prove malice ·or ill will as those words are commonly understood, and the illustrative exceptions of the class to which we have referred appearing on page 319, are undoubtedly in accordance with the law. He discusses, beginning at page 319, a question whether the intervention of an independent actor, namely, one of the contracting parties, which necessarily exists under circumstances like those at bar, does not sev·er the line of causation as known to the common law. But the authorities are all to the effect that it does not; and there is no difficulty on this point, because, as with reference to misdemeanors in the criminal law, whoever violates his contract and all who assist him or instigate him so to do, are principals, and may be jointly sued with him. Among strikingly illustrative cases of the general prin-ciple is Dr. Miles Medical Co. v. Jaynes Drug Co. (C. C.) 149 Fed. 838, 841, where Judge Colt applied the 'rule, now thoroughly established by the authorities, that an injunction will lie in behalf of a manufacturer against one endeavoring to induce purchasers from him to violate the terms on which the sales were made. No exception was made on account of any question of malice or ill will, as those words are ordinarily understood. On the other hand, the persons against whom the injunction was granted had what would or·dinarily be regarded as a meritorious purpose; that is, a desire to deal themselves with the public. So in Bowen v. Hall, 6 Q. B. D. 333, decided by the Court of Appeal in 1881, a case much commented on, it was held that an action lies· against one who induces another to break a contract of exclusive personal service with a manufacturer, notwithstanding it was said that the case was not that peculiar one of domestic service which the common law so thoroughly protected. Some doubt has been expressed about the scope of Bowen v. Hall, but there can be none since the various expressions found in Allen v. Flood, [1898] A. C. 1. The language of Lord Herschell, at page 123, applies specifically to Lumley v. Gye, 2 E. B. & B. 216, a case as much discussed as Bowen v. Hall; but it is an interpretation as late as 1897 to the effect that if, instead of the word "maliciously," the words "willfully and with notice of the contract" had been found in a declaration, the result would have been the same.

However, a thoroughly authoritative illustration is Bitterman v. Louisville & Nashville Railroad Company, 207 U. S. 205, 28 Sup. Ct. 91, 52 L. Ed. ——, decided by the Supreme Court on December 2, 1907. This was a bill in equity to restrain "scalpers" from dealing in limited railroad tickets contrary to the stipulations appearing on the face of the tickets, and an injunction was approved. The opinion, at pages 222, 223, of 207 U. S., at pages 91, 97, of 28 Sup. Ct. (52 L. Ed. ——), refers to Angle v. Chicago, etc., Railway Co., 151 U. S. 1, 13, 14 Sup. Ct. 240, 38 L. Ed. 55, where the word "maliciously" appears, and it continues as follows:

"It is not necessary that the ingredient of actual malice in the sense of personal ill will should exist to bring this controversy within the doctrine of the Angle Case. The wanton disregard of the rights of a carrier causing injury

to it, which the business of purchasing and selling non-transferable reduced rate tickets of necessity involved, constitute legal malice within the doctrine of the Angle Case."

Therefore, we think it clear that an action lies in this case if there was a direct interference in the manner alleged by the plaintiff with a contract already made between the other concerns, or if there was an interference which, under the circumstances, was so sweeping in its aspects that it was efficient to reach future contracts.

There has been much said in the case about malice and motive, which, for the reasons we have stated, need not be further regarded by us. It is sufficient that the defendant, without any exception of the rare character of those we have suggested, interfered knowingly with the contract set out in the pleadings, or that it knowingly issued a letter which set in motion a train of circumstances effective as to future contracts. The plaintiff's case, however, meets a difficulty at this point, because the letter of April 25th was not of itself, on its face alone, effective, and it could be so only in the light of other facts outside of it. The main question is whether it did thus become effective.

The plaintiff sued Whitcher & Co. for alleged refusal to ship the machines, on which a judgment was recovered, raising a serious question; but that is not before us. Also, many elements entering into the topic of damages were raised by the requests for instructions, but only one of them has been argued here. We come first to the main question which we have explained. So far as that is concerned, many propositions were submitted to the Circuit Court and carried into the assignment of errors, and now urged in a series of propositions which, all together, amount to a sharp claim that we, as a court of law, should hold that a verdict should have been directed for the defendant. Perhaps, on a showing of only such facts as we have stated, a request for such a verdict should have been granted; but it appears that Crocker, the secretary of the defendant corporation, being called in its behalf, testified as follows:

"In the forenoon of May 10 had a telephone conference with Mr. Halkyard: up to that time had no knowledge that Gale had given any order to Whitcher. Halkyard called witness on telephone; had not up to that time on May 10 had any talk whatever with Whitcher & Company. At the telephone Mr. Halkyard said that when he returned he had found that an order had been received for a machine for the Exeter Boot & Shoe Company, and that he had taken means to stop it. Does not recall making any reply, and this was substantially all the conversation."

Gale, spoken of in this extract, was the representative of the plaintiff who made the bargain with Whitcher. Plaintiff claims that there were circumstances outside of the letter of April 25th which properly went to the jury in connection with the topic we have explained. Of course, with the rest was the conversation between Crocker and Halkyard testified to according to the extract we have made. Could the Circuit Court have properly taken from the jury the right to determine whether or not, under all the circumstances, the stoppage of the machine by Halkyard was understood by Halkyard to be within the terms of the letter of April 25th, and this with the silent ac-

quiescence and approval of the principal officer of the defendant? In view of Crocker's testimony, could the court have taken from the jury the right to determine whether or not the principal officer of the defendant corporation approved, ratified, acquiesced in, and adopted Halkyard's construction of that letter in connection with the agreement for mutual protection testified to by Halkyard, and his act in stopping the machine in violation of the contract with the plaintiff? As sometimes silence is as effective as spoken words, and as whether or not in this case the silence of Secretary Crocker was thus effective depended on circumstances, and on the impression which he may have made when testifying, with all which the court is less capable of dealing than the jury, we think the learned judge who presided at the trial could not rightly have answered the questions we have stated without the aid of the jury; and we think, therefore, that it is not for us to decide them.

With this apparently simple case the defendant submitted to the court 41 requests for instructions, covering 15 printed pages, and it assigned 30 errors. It is not necessary to reiterate the practice in the federal courts, to the effect that, where there are so many requests, the appellate tribunal under ordinary circumstances scrutinizes the condition sharply. The presentation of this case by the plaintiff with reference to the main issue we have discussed has been very elaborate, but the requests were brought to our attention only briefly; so that it is only with a difficult search of the record which cannot be required of us that we can weigh them accurately. Some seem to be entirely covered by the requests we have discussed to direct a verdict for the defendant. Some relate to the doctrine of causa causans, which we have sufficiently dwelt on. Some ask instructions that there was no evidence of a legal obligation on the part of the Halkyard Manufacturing Company to deliver the machines; and as to these, in the light of what we have already said, the Circuit Court was clearly right in refusing to comply with them. Some are followed in the bill of exceptions by expressions like the following: "The court refused to give the instruction requested, except so far as the instructions contained in the extract from the charge set out totidem verbis in connection with a request numbered" so and so included it. One of such references contained a solid extract from the charge of more than two printed pages. Such exceptions are not permitted by the practice in the federal courts; and, while we sometimes examine them in order to avoid so far as practicable the danger of absolute injustice, we do so with difficulty, and subject to misapprehension in making the examination. So far as we have examined we find that the rules to which these requests relate were correctly and sufficiently stated. We do not perceive that we are required to pursue the requests further.

As we have said, there seems to have been a considerable discussion as to the rules of damages, especially with regard to such as might have been described as consequential. We observe only one exception relating to this topic brought to our attention, and that was as follows:

"The court erred in refusing to charge that the defendant was not liable for damages that would have been avoided by using defendant's machines."

This, properly interpreted and applied to the circumstances, is equivalent to maintaining that the defendant had a right to shut the plaintiff out from every other market, and to force it to purchase of itself. The law does not countenance a proposition so unreasonable and unjust.

We have referred to the fact that the judgment recovered by the plaintiff against Frank W. Whitcher & Co. might, if brought to our attention, raise some questions of importance. We may add that it is possible that the record, on careful examination, would be found to present other serious questions which we have not discussed because, where there are so many requests for instructions as we find here, and so many alleged errors assigned, we do not consider ourselves called on to develop any topics which have not been specially brought to our attention at the bar. We make this observation in order that it may be clear that we are not prejudiced with reference to the topics to which we refer, or with regard to any other litigation whatsoever.

The judgment of the Circuit Court is affirmed, and the appellee recovers its costs of appeal.