## COMPANIA L'UNION DE PARIS v. GOLDSMITH.

(Circuit Court of Appeals, First Circuit. October 7, 1925.)

No. 1785.

1. **New trial** &#9756;12—**While motion for new trial is pending, District Court retains control of case, but can enter no final judgment.**

While motion for new trial is pending, District Court retains control of case, but can enter no final judgment.

2. **Exceptions, bill of** &#9756;40(1)—**Court held not without power to allow bill of exceptions after term subsequent to that in which filed.**

District Court held not without power to allow bill of exceptions at term succeeding that in which exceptions were filed, in view of order made on last day of that term continuing to succeeding term all matters pending and undecided.

3. **Appeal and error** &#9756;702(1), 714(4)—**Alleged error in instructions not reversible, where court's charge not contained in record.**

Alleged errors in giving of instructions cannot be considered, where court's charge is not contained in record; mere allegation of counsel that certain instructions were given being insufficient.

4. **Insurance** &#9756;133(1)—**Policy in Spanish construed according to Spanish text of law.**

Though English version of act, which originated in Spanish, relating to insurance, provides that policies shall be written or printed in both Spanish "and" English, and Spanish version uses the word "or" instead of "and," a policy written in Spanish only is good since by the direct provisions of Acts 1917 Porto Rico, No. 8, vol. 11, discrepancies in the English and Spanish texts of statutes of Porto Rico are to be construed in favor of text in which law originated.

**5. Insurance** ⬤≈335(2)—**Insured held bound by riders attached to policies, though signed by agent without knowledge of their meaning.**

Insured *held* bound by riders attached to policies, relating to making and keeping of inventory of insured goods, and which had been signed by his brother as agent without knowledge of their meaning; they being printed in Spanish.

**6. Insurance** ⬤≈335(4)—**Insured, failing to properly safeguard inventories of insured goods as required by policy, cannot recover.**

Insured, failing to keep in safe last and next to last inventories of insured goods, as required by rider attached to policy, *held* not entitled to recover.

In Error to the District Court of the United States for the District of Porto Rico; Arthur F. Odlin, Judge.

Action by Libbie H. Goldsmith against Compania L'Union De Paris. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Martin Travieso, of New York City (Wolcott H. Pitkin, of New York City, on the brief), for plaintiff in error.

Joseph B. Jacobs, of Boston, Mass. (Jacobs & Jacobs, of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is a writ of error from judgment of the District Court of the United States for the District of Porto Rico, rendered June 29, 1924.

The defendant in error, hereinafter called the insured, carried on a gentlemen's clothing business at 28 San Francisco street, in the city of San Juan, Porto Rico, and for this purpose occupied two floors, where he had a stock of general merchandise, gentlemen's clothing, shoes, suits, and fancy goods.

Insurance upon the stock of goods and his fixtures was obtained from the plaintiff in error, hereinafter called the insurer, in three policies: Two of $5,000 each upon the stock of goods and merchandise, and one of $5,000 on show cases, fixtures, and furniture. The original policies upon his stock of goods and merchandise were issued on October 22, 1919, and November 20, 1920, respectively, and that upon his fixtures and furniture on October 24, 1919. By their terms, each was to continue in force for one year. The first policy on the stock of goods and merchandise was renewed twice, the last renewal being upon October 22, 1921, which would continue it in force until one year from that date; and

the other policy upon the stock was once renewed, which would continue it in force until November 20, 1922. The policy upon his show cases, fixtures, and furniture was twice renewed; the last renewal continuing the policy in force until October 24, 1922.

On or about the 4th day of May, 1922, the stock of goods, show cases, fixtures, and furniture were almost totally destroyed by fire.

The plaintiff alleges that the value of his stock of goods at the time of the fire was $50,000, and that of this only a portion of the value of $1,262.75 was saved, that the value of the show cases, fixtures, and furniture was at least $10,000, and that only a portion of the value of $222.50 was saved. It was admitted that the value of the stock and fixtures that were saved was as claimed.

On June 19, 1923, the jury returned a verdict for the plaintiff in the sum of $14,636.21, with interest at 6 per cent. from December 19, 1922. A motion for new trial was seasonably filed and denied January 29, 1924, and judgment was entered upon that date for the amount of the verdict. A writ of error was allowed February 20, 1924; a bill of exceptions filed April 17, 1924, and approved June 25, 1924.

We are met at the outset by the motion of the insurer to strike the bill of exceptions from the record, because it was not filed within the time prescribed by the rules of the District Court of the United States for the District of Porto Rico.

Two terms of the United States District Court for the District of Porto Rico are held each year, on the first Monday of May and November. Act of Congress March 2, 1917, c. 145, § 42 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3803r).

[1] The motion for a new trial was denied upon January 29, 1924, and until that had been finally disposed of no final judgment could be entered. Until it was disposed of, the court had control of the action. See Smelting Co. v. Billings, 150 U. S. 31, 14 S. Ct. 4, 37 L. Ed. 986; Ward v. Cochran, 150 U. S. 597, 14 S. Ct. 230, 37 L. Ed. 1195; Kingman v. Western Manufacturing Co., 170 U. S. 675, 678, 18 S. Ct. 786, 42 L. Ed. 1192; Kentucky Distilleries Co. v. Lillard, 160 F. 34, 87 C. C. A. 190; Camden Iron Works v. Sater, 223 F. 611, 139 C. C. A. 157. While this motion for a new trial was pending and undecided the court, on October 25, 1923, entered an order continuing all matters pending and undecided to the next term, which would be the May term, 1924.

It is contended that, as the bill of exceptions was not allowed by the District Court until June 25, 1924, it had lost control over the case, and had not reserved by standing rule or special order any authority to allow the exceptions after the November term of court had expired.

On May 3, 1924, before the close of the November term, 1923, the following order was entered by the court:

"By reason of the fact that the act of Congress requires the May term of this court to open on the first Monday in May, and this day being Saturday, May 3, 1924, and this court having disposed of all matters presented to it, so far as possible,

"It is ordered, that the present term of court be adjourned sine die, but all matters pending and undecided are continued until the next term of court to open at San Juan on Monday, May 5, 1924."

[2] When the bill of exceptions was filed on April 19, 1924, notice was served upon counsel for the insured, who, upon April 25, 1924, filed an objection to its allowance, so that the allowance of the bill of exceptions, notwithstanding the objection filed by the insured, was pending and undecided at the time of the entry of the order of May 3, 1924, and therefore action upon it was continued to the next term as effectually as if there had been a special order extending its allowance until then.

[3] There are twenty-seven assignments of error covering the admission and rejection of evidence and refusals of the court to charge the jury as requested by the insurer and the giving of certain instructions. The errors assigned that relate to alleged instructions of the presiding judge cannot be considered because the record does not contain the charge of the judge to the jury. The allegation of counsel that certain instructions were given is not sufficient unless the record shows that they were actually given. Woodbury v. City of Shawneetown, 74 F. 205, 20 C. C. A. 400; Tubular Rivet & Stud Co. v. Exeter, etc., Co., 159 F. 824, 832, 86 C. C. A. 648.

In the record, under the title "Defendant's Request to Charge," certain requested instructions are given and after some the word "Given" is inserted; after others, the words, "Refused, defendant excepts," and the initials "A. F. O.," which are the initials of the presiding judge. As it is not contended that there was not a failure to give the instructions requested, and they are further identified by the initials of the presiding judge and his memorandum that the "Defendant excepts," we pass to their consideration.

About July 1, 1921, because of a law enacted by the Legislature of Porto Rico, the agent of the insurer sent to the place of business of the insured riders to be attached to the policies which had been issued. These riders contained what is known as the "iron safe clauses." They were modifications of the original policies of insurance, and the one to be attached to policy No. 2982, which covered the stock of goods and merchandise, was as follows:

"Number of the indorsement: 29. Number of the policy: 2982, November 20, 1920. Name of the insured: Mr. Ike Goldsmith, San Juan, Porto Rico.

"This indorsement is to make it known that this policy shall be null and void and the company free from all liability thereunder, if the following conditions, which form a part of this contract of insurance and are hereby mutually understood and agreed to, should not be complied with by the insured:

"(1) The insured shall make, at least once a year, an inventory specifying article by article the stock covered by the insurance, and, unless said inventory shall have been made within twelve months prior to the date of this policy, the insured is likewise obliged and hereby binds himself to make an inventory within thirty days of the aforesaid date. Failure to comply with this obligation will render this policy null and void, and the premium for the unexpired period of time will be at the disposal of the insured.

"(2) The insured shall keep a complete set of books of account, which shall clearly show the business transactions, including any and all purchases, sales, and shipments (in cash or on credit) made from the date of the last inventory and during the life of this policy.

"(3) The insured guarantees to the company that he shall keep such books and inventories, together with the next to the last inventory, if the same has been made, completely enclosed in a fireproof vault not only during the nighttime but also during any hours when the aforesaid building is not regularly open for commercial operations. Otherwise the insured binds himself to keep such books and inventories in a conveniently safe and appropriate place, free from danger as a consequence of a fire, in the quarters (place) where the insured stock may be.

"If the insured, at any time during the life of this policy, should fail to present such

books and inventories, the present policy shall be immediately null and void, the company relieved of all liability thereunder, and the insured deprived of any claim whatever and from presenting judicial action for the collection of any loss or damage under the policy.

"Recorded in the books of the company under No. 29 of this agency. San Juan, P. R., July 1, 1921.

"Ch. Vere, General Agent.
"Recorded in conformity.
"Ike Goldsmith.
"Signature of Insured."

The rider to be attached to the other policy covering the stock of goods referred, as did the above, to the number of the policy and was the same in all other respects.

[4] Both were in the Spanish language, and it is contended that, in accordance with the English text of the law of Porto Rico, relating to policies of insurance, they should have been written or printed in both Spanish and English. This law, as enacted by the Legislature of Porto Rico, was introduced in the Spanish language. No. 8, vol. 11, of the Acts of 1917 of Porto Rico, provides "that in case of discrepancy between the English and Spanish texts of a statute passed by the legislative assembly of Porto Rico, the text in which the same originated, in either house, shall prevail in the construction of said statute, except in the following cases." These exceptions are not material.

In the English text of this statute the word "and" appears where the word "or" appears in the Spanish text. According to the former all policies of insurance written by insurance companies doing business in Porto Rico must be in English "and" Spanish, but according to the latter they must be written in Spanish "or" English.

As this law originated in the Spanish language, the Spanish text must prevail, and a policy written or printed only in Spanish would be a compliance with it. Evidently it was the intention of the Legislature that the insured might choose the language to be used in his policy if he desired. If he spoke English only, he could have that language used in his policy, or, if he spoke Spanish only, he could have that. In either event it was not the evident intention that the policy should be written or printed in both languages.

The insured testified that his brother, Abe Goldsmith, was the manager of his business and his agent and representative, that he had taken out the policies of insurance and renewed them as he was authorized to do, and that he had a power of attorney.

[5] The brother, when shown the riders, testified that he signed the name of Ike Goldsmith upon them; that a young man from the office of the agent of the insurer brought them to him; that he noticed they were in Spanish and asked the young man what they were, and he said he did not know, that he thought they were of no importance; that he did not read Spanish and never had the papers translated; and that he did not know that they purported to be an "amendment or change to the insurance policies." He kept them six or eight days and returned them with his brother's signature, and his brother was bound by the same, and cannot now escape from the obligations cast upon him by claiming that his brother did not understand the contents of these papers. When the policies were renewed, they were a part of them. These riders were offered in evidence and marked "Defendant's Exhibits A" and "B."

One of the requested instructions, the denial of which is assigned as error, was:

"I charge you that the 'iron safe clause,' contained in Exhibits A and B for the defendant, is one of the valid and binding obligations on the part of the insured, the plaintiff; and that you cannot find a verdict for the plaintiff, unless you should find first from the evidence before you that there has been a substantial compliance with each and every one of the requirements and conditions of the said 'iron safe clause.' Refused. Defendant excepts. A. F. O."

This instruction should have been given, and there was error in the refusal to give the same.

There was evidence that an inventory was made in September, 1921, and that this was kept on top of the safe at the time of the fire and was destroyed. This inventory was used as the basis of making another inventory in March before the fire.

[6] We think there was error in refusing to give the following instruction, requested by the insurer, and which was assigned as error:

"I charge you that the provisions of iron safe clauses are inserted in policies of fire insurance as an important safeguard against fraud; and that neither the court nor the jury have authority to dispense with or to change in any way what both parties to the contract of insurance have stipulated. If you find that the insured in this case agreed to keep in his safe, not only the last inven-

tory, but also the inventory previous to the last—that is, the one admitted to have been made in the month of September, 1921—but failed to so keep it in a safe place, and, on the contrary, either intentionally or negligently kept it in a place where it could be destroyed by fire if a fire should occur, and that it was so destroyed, then I charge you that your verdict must be for the defendant. Refused. Defendant excepts. A. F. O."

The judgment of the District Court is reversed, with costs to the plaintiff in error in this court, and the case is remanded to that court for further action not inconsistent with this opinion.