## ÆTNA INDEMNITY CO. v. CITY OF HAVERHILL.

### (Circuit Court of Appeals, First Circuit. November 24, 1905.)

### No. 603.

MUNICIPAL CORPORATIONS—BOND OF CITY TREASURER—LIABILITY OF SURETY.

A resolution passed by a city council relating, inter alia, to the salary of the city treasurer, and providing that the city should "furnish" his bond, which was required by law, amounted only in legal effect to a vote by the council that the city should pay the premium on such bond as authorized by statute, and neither such resolution nor the fact that the city paid the premium charged by a surety company for becoming the treasurer's surety on his bond rendered such bond invalid as against the surety company because of false or fraudulent statements in the application of the company which was made by the treasurer in his own name and behalf.

In Error to the Circuit Court of the United States for the District of Massachusetts.

Boyd B. Jones (George W. Buck, on the brief), for plaintiff in error.

Essex S. Abbott, City Sol., for defendant in error.

Before LOWELL, Circuit Judge, and ALDRICH and BROWN, District Judges.

LOWELL, Circuit Judge. This is an action of contract brought by the city of Haverhill, defendant in error, against the Ætna Indemnity Company, plaintiff in error, as surety upon two bonds given by Glines, the city's treasurer, for the faithful performance of his duties in the years 1902 and 1903, respectively. Glines was a defaulter. By direction of the court the jury found a verdict for the city. The case comes before this court upon numerous exceptions and assignments of error which present a single question, viz., was the court below justified in directing the verdict?

The execution of the bonds was admitted, and the breach of their conditions. The answer set up that the city applied to the company for the delivery of the bonds; that at the time of the application, and in order to induce the company to execute and deliver them, the city made to the company certain materially false representations concerning Glines, by which the company was induced to execute the bonds; that the city then concealed from the company certain material facts for the purpose of inducing the company to execute and deliver the bonds, and, that the company was thereby induced to execute and deliver them; that, on discovering the falsity of the aforementioned representations, the company tendered back the premiums, notified the city "that it claimed the bonds had been obtained by fraud," rescinded the agreement, and demanded their return. The evidence showed false representations by Glines made in the application to the company. The latter conceded that a surety is liable on a bond which he has been induced to execute by the fraud of some person other than the obligee or his agents, but contended that where the bond is procured by the obligee, and the surety is induced to execute it by the

fraud of some one acting in the obligee's behalf, then the surety is not bound.

Assuming, without deciding, that the laws of Massachusetts authorize a city to procure, of its own motion and in its own behalf, a bond guarantying it from loss through its treasurer; assuming further, though the assumption would deprive the bond of nearly all practical value, that a city, in procuring the bond, may accredit its treasurer, the very official whose honesty is to be guarantied, so as to be bound by his representations, yet we are of opinion that in the case at bar the city must prevail. There is no evidence that it procured the execution of this bond on its own behalf, or did anything more than approve the bond which the treasurer gave in compliance with Massachusetts Rev. Laws, c. 25, § 72, and pay the surety's charge as authorized by chapter 26, § 23. The instrument in question was not an insurance policy taken out by the city to protect itself from loss through its employés. It was a bond given by Glines, with the company as surety. The application was made by Glines as treasurer in the service of the city, and the written questions which he answered were addressed to him in the second person. The following questions, among others, were asked:

"(23) Do you furnish any additional security covering this position?
"(24) Have you ever given security before?
"(25) Have you ever applied to any company for a bond?"

For answer to the last question Glines gave the name of another fidelity company which had gone surety on a former official bond. His application closed as follows:

"I hereby declare that all the above answers are true; and in consideration of the issue of the indemnity bond, or security hereby applied for and of any further or other bond or security hereafter issued by the said Ætna Indemnity Company, in my behalf, in my present or any other position in this service, I hereby agree to protect and immediately indemnify the company against any loss, damage, or expense it may sustain, or become liable for in consequence of this or any such other bond or security granted in my behalf. I hereby agree that any proper evidence of payment by the said company of any such loss, damage, or expense shall be conclusive evidence against me and my estate of the fact and extent of my liability to the company under this agreement.

"I further agree that said company may decline to issue said indemnity bond hereby applied for, and in case it does issue said indemnity bond, it shall have the right to withdraw or cancel the same whenever it shall see fit; and in any event the company shall not be required to disclose the reasons upon which its action is based, and shall not be responsible for any loss or damage that I may sustain by reason of such action."

In the "Employer's Statement," signed by Rowe, the city's auditor, "the application made by John A. Glines" is mentioned, and Glines is styled the applicant.

The company relied upon a resolve of the city council of Haverhill establishing "the salaries and compensations of the principal city officers," which read in part as follows:

"Treasurer and collector of taxes, in full for all services pertaining to said office, all fees received in his official capacity to go into the city treasury. The city to furnish the bond required by the city council, $2,000."

While the resolve is expressed inaccurately, in substance it amounts only to a vote of the city council to pay the premium on the treasurer's bond, as authorized by the statute above referred to. Certainly the language does not override the nature, object, and method of the transaction as otherwise manifested. In American Surety Co. v. Pauly, 170 U. S. 133, 155, 18 Sup. Ct. 552, 561 (42 L. Ed. 977), the Supreme Court said:

"In the first place, the procuring of a bond for O'Brien, in order that he might become qualified to act as cashier, was no part of the business of the bank nor within the scope of any duty imposed upon Collins as president of the bank. It was the business of O'Brien to obtain and present an acceptable bond, and it was for the bank, by its constituted authorities, to accept or reject the bond so presented."

It was suggested in the company's brief, though it was little pressed at the argument, that the bond was voidable by reason of false representations made by Rowe in the "Employer's Statement." Assuming merely for the sake of the argument that the city was bound by Rowe's statements, we do not find that these statements, fairly construed, were false.

From these considerations, it appears that the learned judge was right in ordering a verdict for the plaintiff, and the defendant's exceptions must be overruled.

The judgment of the Circuit Court is affirmed, with interest, and the defendant in error recovers its costs of appeal.