## DANVERS SAV. BANK v. NATIONAL SURETY CO.

(Circuit Court of Appeals, First Circuit. January 20, 1909.)

### No. 773.

1. INSURANCE (§ 145*)—CONSTRUCTION OF CONTRACT—GUARANTY INSURANCE.

A surety bond for an employé, issued on an application made by the employer, was expressly limited to the term of one year, but provided for its renewal on the payment of a like or agreed premium annually "so long as the employer may wish to continue this bond and the company shall consent to receive such premium." *Held*, that renewals were left as a matter for future contracts between the parties, and that, where new applications therefor were required and made, they, and not the original application, governed as to the renewal terms based thereon.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 287; Dec. Dig. § 145.*

Guaranty insurance, see note to American Credit Indemnity Co. v. Wood, 19 C. C. A. 271.]

2. INSURANCE (§ 669*)—ACTION ON POLICY—INSTRUCTIONS.

Instructions considered in an action on surety bonds given for an employé, arising out of his defalcations which were not discovered until after his death, and *held* to require a reversal on the ground that they did not sufficiently explain to the jury the effect of a settlement between plaintiff and the widow of such employé, after a small part of the defalcation had been discovered, under a mutual mistake in supposing that all had been discovered.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 669.*]

In Error to the Circuit Court of the United States for the District of Massachusetts.

Daniel N. Crowley, for plaintiff in error.

William A. Morse (William J. Griffin, on the brief), for defendant in error.

Before PUTNAM and LOWELL, Circuit Judges and ALDRICH, District Judge.

PUTNAM, Circuit Judge. As the parties arrange themselves in this court as in the Circuit Court, it will be convenient to call throughout the plaintiff in error plaintiff, and the defendant in error defendant.

The suit was tried to a jury in the Circuit Court, with a verdict for the defendant. Thereupon the plaintiff sued out this writ of error. Neither party seems to have had much regard to our rule as to the preparation of a brief. Especially, the brief in behalf of the plaintiff contains no proper references to the pages of the record, and otherwise, as required thereby. Under these circumstances, we find this a difficult record to examine. Therefore, we touch on only such points as seem absolutely necessary to be determined by us for the present purposes.

The plaintiff was a savings bank, and employed as its treasurer Albion F. Welch, who was ultimately found to be a defaulter for a large amount, and who died before the defalcation was discovered. The plaintiff made the usual application to the National Surety Company,

the defendant, to become surety for Welch. Welch also made an application which was practically simultaneous with that of the plaintiff, but which, under the circumstances of this case, does not affect the rights of the parties, and need not be considered. Ætna Indemnity Company v. Haverhill, 142 Fed. 124, 73 C. C. A. 342, decided by this court on November 24, 1905, and certiorari refused by the Supreme Court, 201 U. S. 643, 26 Sup. Ct. 759, 50 L. Ed. 902.

The plaintiff's application nowhere used the word "warranty." It contained various representations and statements, as usual. Among the rest, of one class, was the following:

"Q. Has applicant always performed duties faithfully and to your satisfaction? A. Yes."

Among the other class was the following:

"Have you so systematized your business that books, accounts and vouchers kept by other employés will serve as a check upon the applicant in such position, and enable you by an examination and comparison to detect and discover any act of fraud or dishonesty on the part of the applicant? A. Yes."

The suretyship bond bore date the 1st day of February, 1900, and ran for one year. It contained various statements and provisions of the two classes we have referred to; among the rest, one for inspection of the accounts and books, and a stipulation that Welch had not, within the knowledge of the plaintiff, been at any time in arrears or default in either his present or any other employment. It also contained the usual reference to the plaintiff's application; also a stipulation that the plaintiff should immediately give the defendant "notice in writing of the discovery of any default or loss," with a further stipulation for full particulars "as soon as practicable thereafter." It also contained in substance a provision to the effect that, unless such proofs were made, no claim could be sustained. The bond also contained the following:

"Now, therefore, in consideration of the payment of the sum of fifty dollars ($50) lawful money of the United States of America, to the company, as as a premium for the term commencing at the date hereof and ending on the first day of February, nineteen hundred and one, at twelve o'clock noon, in order to effect a continuance of this bond, of an annual premium at a like or agreed rate to be paid to the company on or before the date last mentioned and annually thereafter, as a premium for each ensuing year, so long as the employer may wish to continue this bond and the company shall consent to receive such premium," etc.

Cotemporaneously with the expiration of the year named in the bond, namely, in January, 1901, using a form presumably drawn by the defendant, the plaintiff made application for a continuance for an additional year, and in that application made certain statements varying somewhat from those contained in the original application; and it further therein expressly warranted the statements to be true, and added that they were made for the purpose of inducing the defendant to continue the suretyship. Thereupon a certificate of continuance was given by the defendant, and a like certificate was given on February 1, 1902.

The entire defalcation on the part of Welch was stipulated at $12,-523, of which $10,508 was during the year from February 1, 1900, to

February 1, 1901, and possibly $606 more. Although this defalcation was not discovered by any of the plaintiff's officers until after he died, apparently something was previously known about it by a subordinate employé, a bookkeeper, referred to in the judge's charge as hereinafter stated. The dates and amounts required to develop the facts to which these particular observations relate cannot be obtained except by searching through the record; but we can state them sufficiently to bring out the point involved. After the death, discovery was at first made by one or two of the plaintiff's officers of a defalcation of only a comparatively minor amount. This was communicated to Mrs. Welch, the widow, who, in order to prevent publicity and protect her husband's memory, made it good. Subsequently, another deficiency of a comparatively minor amount was found, which was also paid by the widow under the same circumstances. The facts about these amounts were not communicated generally to the plaintiff's officers, nor in any way made public, until it was subsequently ascertained that the defalcation was a very considerable one. On this being discovered, formal notice of the entire defalcation was promptly given by the plaintiff's officers to the defendant; and, publicity thereupon of course ensuing, Mrs. Welch demanded back the amounts that she had paid. The same not being repaid, she sued the plaintiff therefor in an action in the nature of one for money had and received at common law, in which action she prevailed, and obtained back her money. The present suit is not only for the defalcation which was discovered subsequently to Mrs. Welch's payments, but for the entire defalcation, including the amounts which she collected back.

We think we have now stated sufficiently the facts of the case to enable the propositions of law which follow to be understood. The whole charge is made a part of the record, but no exceptions which we will have to consider were taken other than as hereinafter stated.

One proposition relied on by the plaintiff is that the requests for continuances of the bond in January, 1901, and January, 1902, have no effect on the case, because the bond itself provided for its continuance, and because, therefore, it was governed entirely by the original application of January 30, 1900. This is clearly unsound, because the bond by its terms expired at the end of the year, and had no application thereafter, except for settlement of liabilities, unless it was continued by a new agreement between the parties, the continuance forming a new act. The provision for a continuance is clearly to the effect that neither party has a right to continue without the consent of the other. Therefore, before consenting, the defendant had a right to demand the new applications to which we have referred, and to now insist that the law holds that, in continuing, it relied on those applications, and that they formed a part of the relations of the parties during the continuances.

At this point we note two strange omissions: No notice was taken of the fact that the original application contained no express warranties, while the renewal applications did. A more singular thing is that no notice was taken of the fact that the larger portion of the defalcation occurred before the applications for continuance of the bond

were made; so that those applications were immaterial with reference thereto. With regard to these facts, however, no deductions are to be made from any conclusions we have reached. In the same connection we may add that the provision with reference to giving prompt notice was not considered with regard to the fact that it was given promptly after the larger portions of the defalcations were discovered, although delayed with reference to the minor items which we have explained. Whether the claim of the plaintiff against the defendant is divisible, or, if necessary, may be divisible on this account, we do not consider.

The plaintiff objected to the admission of the applications for the continuances; yet the court admitted them, and, in view of the facts we have stated, properly so as a general proposition, because they were evidently parts of the contracts of continuance. The plaintiff did not follow up its exception, and it asked no particular ruling from the court in regard to the effect of these applications. The court, however, did rule that the statements made in them were subject to the instructions which it gave with regard to the original application. Inasmuch as the renewal applications contained express warranties, this ruling was favorable to the plaintiff; so that in no event is the plaintiff entitled to this exception.

One very substantial topic brought to our attention is classed under the head of "accord and satisfaction." It was in substance submitted to the jury whether the dealings with Mrs. Welch amounted to accord and satisfaction; but the rules regarding that branch of the law are technical. 2 Chitty's Contracts (11th Am. Ed.) 1122 et seq. The plaintiff was at least entitled to more specific instructions than were given. It is very doubtful whether any arrangement made with a stranger can amount to accord and satisfaction. 2 Chitty's Contracts (11th Am. Ed.) 1133; Pollock's Principles of Contracts (7th Ed.) 469, 470. The true view of the case in this particular avoids that doubt.

It may be that the negotiations with Mrs. Welch, the secrecy which attended them, and the delay which ensued by reason thereof, caused the withholding of a notice to the defendant to such an extent that it may have some effect on the question whether it was given within a reasonable time. It is also to be noted that, in view of the fact that, if there had been no defalcations except those which appeared at the time the negotiations were made with Mrs. Welch, the result would have been beneficial to the defendant; and it may be that on that account the plaintiff is excusable for not giving notice sooner. On the other hand, it may be that the secrecy which attended these negotiations, contrary to the stipulations in the surety obligation, prejudiced the plaintiff's case for that reason. It is also possible, as we have already suggested, that the plaintiff's claim may be divisible on the basis we have explained, so that the notice which was given the defendant was seasonable as to the larger portion of the claim, even if not seasonable as to the whole of it. We do not express any decisive views on any of these questions. It is enough that the transactions with Mrs. Welch took on an entirely different phase from that which was presented to the jury.

It is entirely evident that the transactions with Mrs. Welch, including the payments by her, were based on a mutual mistake, and that under

the circumstances the whole inducement which moved her to make the payments was defeated. There was apparently justification for Mrs. Welch's claim, and there is apparently justification for the plaintiff now claiming that a final settlement which would avoid publicity was the substantial purpose of the adjustment, and that the subsequent discovery of additional defalcations of more than twice the amount which had been settled for showed a mutual mistake of a fundamental character, entitling Mrs. Welch to recover her money on an application made within a reasonable time thereafter. If so, the whole transaction was a nullity, and the widow was entitled to recover her money as she did. It is not necessary that we should determine positively the facts in this respect. It is enough that there was sufficient in the record to require that this topic should have been clearly explained to the jury. Not only is this true, but on the record as it stands we are of the opinion that the court should have charged the jury that the jury should find favorably to the plaintiff so far as the right of Mrs. Welch to recover the money in question was involved.

Another error assigned relates to the admission in evidence of certain records of the plaintiff's finance committee. This evidence was offered under plaintiff's representation with reference to the systematizing of its business, especially its books, accounts, and vouchers; and it consisted of entries on the records in the years 1895, 1896, and 1897. It concerned only two or three transactions; and, without something further, it had nothing substantial to do with the systematizing of the plaintiff's bookkeeping, and was, moreover, three years anterior to the application for the bond in suit. It was apparently immaterial and irrelevant, but it was not connected in such way as to suggest even the possibility that the plaintiff was prejudiced by it. The same observations apply to the assignment of an alleged error in regard to certain transactions with Nathan Matthews in 1873.

Several other alleged errors, five in all, are grouped by the plaintiff as though they related to the same topic; but they cover two. One is whether the notice to the defendant was seasonably given in accordance with the contract between the parties, and the other whether knowledge of the default by the plaintiff's president and investment committee was knowledge by the plaintiff itself. As to the first, the instructions by the court, appearing at two or three points in the charge, were favorable to the plaintiff. As to the other, the court ruled that a jury might take into consideration the conduct or knowledge of the clerk we have referred to. It is possible that, by reason of some suggestion not brought to our attention, this may have been true in some aspects of the case; but it is such an unusual proposition that it should have been explained to the jury with proper limitations and qualifications. However, it is probable that these difficulties will disappear on a new trial in view of the suggestions which we will make. Therefore, as there must be a new trial in view of what we have already stated, and as the questions involved in these alleged errors are not brought out so that we can discuss them satisfactorily, we will pass over all of them lightly.

The topics of knowledge and notice were explained by the court, covering for that purpose several pages of the charge. There were

certain rulings requested which it is claimed were not given. The exception was expressed to be "to such portions of the charge as were inconsistent with the plaintiff's requested rulings." We are giving the precise phraseology. Exceptions in this form are not usually valid. Having gone over this matter thoroughly in Tubular Rivet Company v. Exeter Boot & Shoe Company, 159 Fed. 824, 86 C. C. A. 648, we have no occasion to dwell on it here; therefore, all we can do is to read over what the court instructed the jury, and to observe on this point that it seems to be generally in harmony with the rulings of the Supreme Court in Fidelity Company v. Courtney, 186 U. S. 342, 22 Sup. Ct. 833, 46 L. Ed. 1193, and in an earlier case, American Surety Company v. Pauly, 170 U. S. 133, 18 Sup. Ct. 563, 42 L. Ed. 987. Of course, it is possible that, if specific objections had been made to particular portions, and the record had been brought out specifically with reference thereto, there would appear some points in which the charge should have been modified. But we have no such specific objections, and only a request for an arbitrary ruling, which asked the court to positively direct the jury that knowledge of default by the two gentlemen named in the request was not the knowledge of the plaintiff, so that, if the two gentlemen named withheld their knowledge from the rest of the trustees, "the plaintiff could not suffer, whatever may have been the reason of their action." This fails to state the fact that one of the gentlemen named, Mr. White, was the president, and that the default was known both to him and to the investment committee; and the request was without regard to any qualification as to the powers and duties of that committee. The authorities cited by the plaintiff on this point do not touch the case. Two of them, American Surety Company v. Pauly, already referred to, and Santiago Innerarity v. Merchants' Bank, 139 Mass. 332, 1 N. E. 282, 52 Am. Rep. 710, were of the well-known class in which the officers who had the knowledge, or received the information, were, with reference thereto, adversely interested against the plaintiff corporation. In the next case cited, American Bonding Co. v. Spokane Building Soc., 130 Fed. 737, 65 C. C. A. 121, the knowledge was the knowledge of a default by a single officer, not communicated, and existing when the surety bond was given, and, therefore, not at all within this case. Another citation, Fidelity & Deposit Company v. Courtney, 186 U. S. 342, 22 Sup. Ct. 833, 46 L. Ed. 1193, while favorable to the plaintiff on another point, is thoroughly in harmony with the general propositions of the charge as to this particular question of notice after a default, especially at pages 346 and 347 of 186 U. S., at page 835 of 22 Sup. Ct. (46 L. Ed. 1193).

This leaves only one other proposition brought to our attention, which we will consider. The court charged the jury very fully as to the question of diligence on the part of the officers of the plaintiff corporation during the progress of the defalcation, dwelling especially with reference to the extent of what they ought to have known, and submitting to the jury whether they acted "as reasonably prudent men would act." There were two classes of conditions or obligations resting on those officers. One class related to existing facts, and to the knowledge of the officers of the corporation, or what they might have

known, with reference to past or future defaults. .The other related to matters which were entirely at the will of the officers, as, perhaps, the method in which the books should be kept, and how often there should be examinations, etc. It is not clear that the court distinguished as to the differing rules of diligence required by the law with regard to these differing classes of conditions or obligations. The rule as to the former is clearly stated favorably to the plaintiff in Fidelity & Deposit Company v. Courtney, already referred to, at pages 360 and 361 of 186 U. S., at page 840 of 22 Sup. Ct. (46 L. Ed. 1193). If the instructions to the jury failed to distinguish suitably as to any particular class of conditions or obligations, the same would probably have furnished ground of error if exceptions had been properly taken. As, however, there must be a new trial, it is not necessary to pursue this topic further.

The judgment of the Circuit Court is reversed, the verdict set aside, and the case remanded to that court for further proceedings not inconsistent with the opinion passed down the 20th day of January, 1909; and the plaintiff in error recovers its costs of appeal.