## PROSECUTION FOR AIDING IN THE SOLICITATION OF A BRIBE.

Circuit Court of Franklin County.

RODNEY J. DIEGLE v. THE STATE OF OHIO.*

Decided, October 17, 1911.

*Bribery—Aiding and Abetting in the Procurement of—Sufficiency of Averments in Indictment—Competency of Evidence—Entrapment—Reference to Defendant's Failure to Take the Stand—Co-ercion of Jury—Sections 12380, 12823 and 13661.*

1. An indictment which charges a sergeant at arms of the state Senate with knowingly aiding and abetting A, a member of the Senate, in the solicitation of a bribe, is not rendered insufficient by reason of failure to aver knowledge on the part of the defendant that A was a member of the Senate, or to aver how the defendant aided and abetted in the commission of the offense, or in stating the corrupt purpose to be that A "might be then and there influenced," whereas the statute uses the words "to influence."

2. Where the character of the witness is attacked by showing his indictment and conviction upon a charge of felony wholly disconnected from the issue on trial, the trial court is not bound to permit counsel to go into details with reference to the crime so charged or specifically into the history of the witness' past life where the same is wholly immaterial and collateral.

3. The entrapment complained of not having been originated by the prosecuting attorney or any officer of the state in this case was not of such a character as to bar prosecution for the offense alleged to have been committed by the defendant.

4. The remark by a prosecuting attorney in his argument to the jury with reference to a certain statement that the "defense had an opportunity to deny it, and it stands uncontradicted," is not such misconduct as necessitates the setting aside of a verdict of guilty, where the remark was immediately withdrawn by the speaker and the jury were instructed by the court to disregard it.

*C. J. Mattern, Belcher & Connor* and *J. E. Egan,* for plaintiff in error.

*Timothy S. Hogan,* Attorney General, and *E. C. Turner,* Prosecuting Attorney, contra.

---

*Affirming *State* v. *Diegle,* 11 N.P.(N.S.), 593, and *State* v. *Andrews and Diegle,* 11 N.P.(N.S.), 605.

Ferneding, J.; Dustin, J., and Allread, J., concur.

The plaintiff in error was indicted and convicted of aiding and abetting Senator Andrews in soliciting a bribe as a member of the General Assembly.  A motion for a new trial was overruled and the case brought to this court upon a petition in error to review the regularity of the conviction.

## I.

The first contention made by counsel for plaintiff in error to set aside said verdict is that the indictment is defective in the following particulars, to-wit:

(*a*)   That it does not expressly aver that Deigle, sergeant-at-arms of the Senate, knew that Andrews was a member of the state Senate.

(*b*)   That the indictment is defective in not stating the nature and character of the messages Diegle is alleged to have carried to Andrews.

(*c*)   That the indictment in charging a corrupt purpose states that said Andrews "might be" then and there influenced, whereas the statute prescribing such offense provides that the corrupt purpose was "to influence."

(*a*)   Relative to the first objection to the indictment, it is sufficient to say the form adopted is in harmony with that generally accepted by the courts of this state.  The general averment that Diegle *knowingly* aided and abetted Andrews in the commission of the crime taken in connection with all the other averments of the indictment is in our judgment sufficient.

Section 12380 of the General Code provides:

"Whoever aids, abets, or procures another to commit an offense may be prosecuted and punished as if he were the principal offender."

(*b*)   In respect to the second objection, an examination of the indictment in connection with the foregoing statute, Section 12380, General Code, quoted, convinces us that the general averment that Diegle knowingly aided and abetted Andrews in the commission of the offense charged, without stating specifically as to *how* he did so, is a proper compliance.

The manner employed in the aiding and abetting, such as the carrying of messages and arranging of meetings, might well be considered surplusage in the indictment and is unnecessary.

(c)    For the third objection raised, there is here a slight departure from the statute.   Section 12823, General Code, provides:

"Whoever corruptly gives, promises, or offers to a member or officer of the General Assembly    *    *    *    any valuable thing, or corruptly offers or promises to do any act beneficial to such person, *to influence* his action, vote, opinion or judgment in a matter pending    *    *    *    and whoever being a member of the General Assembly    *    *    *    or agent or employe of the state *    *    *    solicits or accepts any valuable or beneficial thing *to influence* his action, vote, opinion or judgment in a matter pending    *    *    *    shall be fined    *    *    *    or imprisoned    *    * *    or both."

The indictment charges Andrews as a member of the Senate with having solicited and accepted a bribe "with the intent and purpose that he, the said L. R. Andrews, *might be then and there influenced* with respect to his official duty," etc.   The distinction is in the use of the words "might be then and there influenced" instead of "to influence," the language of the statute. Upon a careful reading and examination of the indictment, however, we are of the opinion that such departure is not substantial.

"It is requisite that every indictment should contain a substantial description of all the circumstances descriptive of the offense as defined in the statute, so as to bring the defendant precisely within it."   *Hirn* v. *State*, 1 O. S., 24.

## II.

### Rulings on Evidence.

Numerous exceptions have been taken by counsel to the rulings of the court on the admission and rejection of evidence.   It is impracticable to review all these in detail.   We have, however, considered all the exceptions taken as we came to them in reading the record and have also examined carefully the briefs submitted in relation thereto.

Chief among the objections raised by counsel for plaintiff in error is, that the trial court erred: 

(a)    In limiting the cross-examination of Detective Smiley.

(b)   In refusing to permit Senator Andrews to give the conversation he had with Senator Cetone before leaving for the Chittenden Hotel, and his (Andrews) position on the insurance bill which became the subject of the bribery.

(c)   In admitting certain conversations had between Smiley, the detective, and Huffman and Cetone on the theory of conspiracy.

(a)   The trial court permitted counsel for Diegle to cross-examine Smiley as to his plea of guilty to an indictment to defraud as returned by the grand jury of Cook county, Illinois, and also permitted Smiley to explain why said plea was made, the witness stating the plea was subsequently withdrawn with the permission of the court and the case nollied.   We think this was not error.   The trial court was not required under the rules of evidence to permit counsel to go beyond this and into the details of the crime charged nor into specific history affecting the witness' past life.

As to the alleged transcript of said criminal proceedings in Cook county, Illinois, offered by the defense to challenge the credibility of the witness Smiley, and excluded by the trial court, we do not think the court erred in this respect for the obvious reason that said transcript as offered did not purport to be nor was in fact a complete record.

(b)   As to the conversation Senator Andrews had with Senator Cetone before leaving for the Chittenden Hotel to interview Smiley, the detective, and the declared attitude of Senator Andrews on the bill in question, is not, we think, a part of the *res gestae* of the case and was properly excluded.

(c)   The testimony offered by the state to make out a *prima facie* case of conspiracy was in our opinion of sufficient weight as to justify the trial court in admitting the conversations had between Smiley, Diegle, Huffman and Cetone in furtherance of said conspiracy and that said court did not err in respect thereto.

### III.

#### As to Proof.

It is urged by counsel for plaintiff in error that there was an entire failure of proof to connect Diegle and Andrews with the

crime charged; that Diegle was the agent of Detective Smiley and not Senator Andrews; that no proof was made of the carrying of messages between Smiley and Andrews.

We are of the opinion that the proof offered by the state is capable of the construction contended for by the state, and that under all the evidence submitted, the question was for the jury to determine whether or not Diegle aided and abetted Andrews in the solicitation and procurement of the bribe.

## IV.

### ENTRAPMENT.

It is strenuously urged that the record shows a case of entrapment and that such entrapment bars the state from prosecuting for the offense so originated by entrapment. This proposition is founded upon alleged connection of the detective, Smiley, with the origin, detection and exposure of the case at bar.

Briefly stated, the record discloses that two detectives, Arthur Charles Bailey and David H. Barry, of the Burns detective agency, were detailed early in April, 1911, to come to Columbus and investigate alleged bribery in the Legislature. This appears to have been done at the instance of the secretary of the Ohio Manufacturers' Association. There is no evidence that the detectives were employed or brought to Columbus by any other authority, nor their expenses paid, or promised to be paid, by the state or county, or an officer of either.

Arriving in Columbus they were engaged for about two weeks in an investigation of this subject, and then departed. On or about April 24th, they returned, about which time a third detective, F. H. Smiley, known as Harrison, arrived. On Tuesday, April 25th, a dictagraph was installed by the detectives in Room 317 of the Chittenden Hotel. A wire was attached to this dictagraph to transmit conversations and extended to the receiver in Room 316 adjoining.

The prosecuting attorney learned of the presence of these detectives, and on Tuesday, April 25th, Roscoe R. Walcutt, an official court stenographer, was at the request of the prosecuting attorney installed in Room 316 to report said conversations.

On Thursday, April 27th, Rodney J. Diegle, now plaintiff in error, at the instance of Detectives Bailey and Barry, called

upon Detective Smiley at Room 317, Chittenden Hotel, at which time it was arranged that Diegle should aid in securing a sufficient number of Senators to report out of the committee on insurance, the Cetone-Whittemore insurance bill then pending in the Senate. At this meeting were present Diegle, Harrison and Bailey. Diegle at this meeting promised to secure the necessary number of votes for this purpose at a certain stipulated price. He himself was to receive for his services $200, of which $50 was paid him at the time in cash, in marked bills. The names of the members of the state Senate to be involved were not given at this meeting. Shortly after 2 o'clock of the same day, Diegle again called at said Room 317 and reported to Smiley the names. About 5:30 of the same day, two of the Senators whose names had been furnished by Diegle reported at said Room 317. According to the testimony of Detective Smiley, and the conversation as reported by the official stenographer taken over the dictagraph, the two Senators present accepted the promised money, $200 each, for their support in getting the bill out of committee, the money also being paid in marked bills.

After some difficulty in having Senator Andrews report at Room 317, Smiley, about 3 o'clock P. M. the next day, April 28th, and at the suggestion of Diegle, called at the Senate chamber to see Andrews. Failing to find the Senator, Smiley, who was known as Harrison, returned to the Chittenden Hotel and on his arrival was handed a note by the hotel clerk from Senator Andrews saying:

"Mr. Harrison, owing to a mistake I went to the Neil House and missed you. Am going to make a 4 o'clock train for Ironton, O., but will be back Monday 11 A. M. when you can see me."

Senator Andrews in his testimony, admitted writing the note. Shortly after the receipt of the note, Andrews, who had remained in the Chittenden Hotel lobby, was pointed out to Smiley. The latter introduced himself to the Senator and the two then went to Room 317, where according to the testimony of Smiley, and as reported over the dictagraph, the arrangements previously made by Diegle were confirmed, and $200, according to the testimony, was then paid Andrews by Smiley, also in marked bills.

, It also appears in the record that Smiley at the instance of Diegle had a telephone conversation with Andrews in relation to the arrangements Diegle had made, and which was previous to Andrews coming to the Chittenden Hotel.

Detective Bailey testified he said to Diegle on the way to the Chittenden Hotel, immediately prior to the first meeting between Diegle and Smiley: ·

"This man Harrison evidently had some money and I would look to Col. Diegle to see that I was taken care of."

Bailey also testified that previous to any steps taken by Smiley toward interesting Diegle the latter had a conversation with Barry and Bailey in the bar room of the Neil House when a telephone merger bill was the topic of conversation, and made the remark that some people are trying to put through a two million dollars proposition on a bottle of pop. While this conversation had no direct reference to the case at bar, it is significant as tending to show a corrupt motive on the part of Diegle and in that respect has a bearing on the question of entrapment.

There are many other details, but the foregoing in substance is the case of the state, so far as it concerns the question of entrapment.

The testimony given by the official stenographer in reporting the aforesaid conversations taken over the dictagraph was by agreement of counsel on both sides permitted to go to the jury with the reservation that no names were to be mentioned in referring to Diegle and associates, but they were to be designated as a voice, second voice, third voice, fourth voice and fifth voice.

Counsel have argued at length upon the proposition of entrapment and submitted many authorities in support of their positions, respectively. Notable among the line of cases cited by the Attorney-General and the prosecuting attorney on behalf of the state are the so-called decoy letter cases instituted and prosecuted by the United States Government. *Grinnis* v. *U. S.*, 150 U. S., 604, *Price* v. *U. S.*, 165 U. S., 311.

We think the case most clearly in point is the case of *State* v. *Fox* (unreported), from Meigs county. This resulted in a conviction in the trial court, was affirmed in the circuit court and

afterwards presented to the Supreme Court which refused leave to file a petition in error. .The Fox case may, therefore, be considered as an expression of the Supreme Court on the law of entrapment in this state. The Fox case originated at the instance of the prossecuting attorney, who invited Fox to his home where the alleged entrapment took place, two witnesses being secreted in an adjoining room with a door partly opened between. Fox was interested in having certain criminal cases then pending against him continued and testified that his object in seeing the prosecutor was for the purpose of inducing the latter to consent to a postponement of the trial on the indictment. At this meeting and after said request had been made, the prosecuting attorney asked Fox, "What is there in it for me," to which Fox at said interview later replies, "I have laid away a thousand dollars"; the past tense indicating that this amount had been set aside for this purpose prior to his going to the prosecutor's house.

In this case the question of entrapment was properly made in the trial court, and in the circuit court, and the conviction in effect affirmed by the Supreme Court. Following the authority so laid down, we are bound to hold in the case at bar that all the testimony offered does not amount to such an entrapment as would bar prosecution. The facts adduced in the Fox case in our judgment are much stronger in favor of the contention of entrapment than the Diegle case under consideration, for in the case here it does not appear that the prosecuting attorney had anything to do with the bringing of the detectives to Columbus, and that his connection arose merely by the designation of an official stenographer to report the dictagraph conversations.

We have carefully examined the charge of the court on the subject of entrapment and are of the opinion the law was correctly given.

## V.

### CHARGE OF THE COURT.

From what has been said as to the scope of the indictment, it would follow that the court properly refused special requests

3 and 4, which assumed to limit the charge to the mere delivery of messages and arranging of meetings.

Special requests 5, 6, 7, 8 and 9 were on the subject of entrapment and were properly refused.

Special request 12 was not appropriate to the facts of the case and was therefore properly refused. There are quite a number of objections to separate and disconnected paragraphs · of the general charge, but when the charge is considered as an entirety, we are of the opinion there is not prejudicial error.

## VI.

COMMENTS BY COUNSEL ON DEFENDANT'S FAILURE TO TESTIFY.

We have examined carefully the record as to the comments made by Mr. McGhee, assistant attorney-general, in his argument to the jury in speaking of the dictagraph conversation in which he reported to the court as having stated,

"That Rodney Diegle made that statement and the defense had the opportunity to deny it, and it stands uncontradicted."

While Section 13661, General Code, provides that the neglect or refusal of a defendant to testify shall not create a presumption against him, nor shall reference be made to nor comment made upon such neglect or refusal, yet we think what was said by counsel under the circumstances in referring to the *defense* and *not the defendant,* and the prompt instruction of the court to the jury to disregard the remark so made by counsel of what was said, and the immediate and complete withdrawal thereof by counsel, does not constitute prejudicial error and furnish sufficient ground for reversal.

## ·VII.

ALLEGED COERCION OF THE JURY.

In respect to the alleged coercion of the jury in agreeing to a verdict, we hold to the view that nothing was said by the court that might not properly be said in urging the jury to agree, nor was the length of time such as to indicate coercion. The law encourages the agreement of juries rather than disagreement and proper cautionary instructions to that effect may be given.

## VIII.

### ALLEGED MISCONDUCT OF THE JURY.

We have examined the affidavits of the jurors and of others as to misconduct of the jury and as to matters affecting their deliberations. We are of the opinion that much of the matter testified to is incompetent to be shown by the affidavit of a juror in opposition to his own verdict. But taking all that is properly shown, we think it is not sufficient to call for a new trial.

Considering the whole record, we are of the opinion that the evidence offered sustains the verdict, and we find no prejudicial error.

The judgment is, therefore, affirmed.