# J. E. GAMALIELSON *v.* HILO SUGAR COMPANY.

## No. 2016.

ARGUED OCTOBER 22, 1931.          DECIDED NOVEMBER 10, 1931.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

This is an action of ejectment for the recovery of three narrow pieces or strips of land situate at Pona-hawai, district of Hilo, County of Hawaii. At the conclusion of the plaintiff's case the defendant moved for a nonsuit, which motion was granted. The case is here on

plaintiff's exceptions. Three of the exceptions relate to the admission of evidence against the plaintiff's objection, but, for reasons which will presently appear, these exceptions need not be considered. The fourth exception relates to the granting of the motion for a nonsuit. The motion was as follows: "If the court please, at the present time we move that the plaintiff be nonsuited, on the ground that the evidence now discloses that the defendant has been in possession of this strip of land for at least fifteen years, and this possession has not been explained, and under the law in this jurisdiction, as laid down by the supreme court of Hawaii and other jurisdictions in the United States, such unexplained possession for the statutory period gives rise to a presumption of title in the party in possession of the land."

Plaintiff introduced in evidence a land patent, No. 5484, issued to him by the Territory of Hawaii on April 12, 1911, conveying certain described land situate at Ponahawai, district of Hilo, County of Hawaii. Plaintiff then called as a witness Thomas E. Cook, a concededly competent civil engineer, who testified that at plaintiff's request he had made a survey and a map of a portion of the land described in the patent. The map was identified by Cook and received in evidence. There appears on it a narrow yellow marking running mauka-makai. The witness was asked this question: "There are three portions of this yellow marking, Mr. Cook. I will ask you to examine the plaintiff's amended declaration, and say whether those three parts of property described in the plaintiff's declaration are identical with the ones which are on the map as parts one, two, and three of the land of the plaintiff," and answered: "Piece #1 in the declaration covers the portion indicated as piece #1 on the map; piece #2 covers the piece indicated on the map as #2; piece #3 covers piece #3 on the map." The

witness was then asked whether he compiled a description of the property as described in the plaintiff's declaration in three parts, to which he answered, "Yes." He further testified that there was on the three pieces indicated by the yellow marking a flume which was owned by the Hilo Sugar Company and that the land was occupied by that company. After going with considerable detail into a description of the boundaries of the land by courses and distances and areas he was asked this question: "Without going into the description by figures, there being twenty-six, do these represent the present location of the Hilo Sugar Company's flumeway, on the land conveyed by Grant 5484?" to which he answered, "They do." On cross-examination the witness testified as follows: "Q The original declaration describes the flume line in question as containing 1803 square feet. Your amended declaration, after deleting part of the original description of the main flume, contains an area of something over 2,000 feet. How do you explain that? A I very hurriedly worked that description up. I might check it and see if there is an error. Q You are not prepared to say the description in the amended declaration is correct? A I would have to check it. Q You are not prepared to say, under oath, the description in the amended declaration is correct? A It is correct, more or less. Q Is that a sufficiently exact term for a surveyor to use? A The description of the land would govern the area. Q There must be an error in one of the two descriptions? A It is probably in the area, because I hurriedly worked that area up. Q So you are not prepared at the present time to say that the description in the amended declaration, which has been filed, is correct as to area or as to courses and distances? A I am not."

Referring to the testimony given on cross-examination defendant says in its brief: "No other evidence was

given on this point so that the record contains no evidence whatever upon which a verdict or judgment in plaintiff's favor could have been rendered covering the land described in the amended declaration." This statement is inaccurate. The testimony given by Cook on direct examination shows that the land described in the amended declaration is the same land upon which the defendant maintains a flume. If there is a discrepancy between the testimony he gave on cross-examination and that which he gave on direct examination it was a question for the jury to decide, from all his evidence, whether the land occupied by the defendant was the same land described in the complaint. Moreover, there is nothing in the record which tends in the slightest to show that the court's attention was called to the testimony which Cook gave on cross-examination or that the motion for a nonsuit was predicated upon it.

Defendant's next contention is that it is shown by the uncontradicted evidence that it had acquired title to the land by adverse possession. This contention is based on the following testimony given by Thomas E. Cook, the witness already referred to, on direct and cross-examination. *On direct examination*: "Q (displaying a map to witness) Mr. Cook, does this map show any portion of the land described in Land Patent No. 5484, which is exhibit 'A'? A It shows the upper portion. Q Mr. Cook, referring to the portion which is covered by yellow crayon, what does that indicate on this map? A The premises occupied by the flume. Q Whose flume? A The Hilo Sugar Company. Q The property in the larger marking is the property conveyed by this grant, is it? A Yes. Q And the portion which is marked by the yellow is that which is occupied by the Hilo Sugar Company? A Yes. * * * Q How wide is this flume line? A It is of different widths. It all depends on the trestle. Q Approximately how wide would it be, as an average? A About four feet, or four

and a half. * * * Q You have stated the Hilo Sugar Company's flume is on that land. Please describe that flume. What is the nature of it? A Regular northwest lumber. It is a regular cane flume. Q What is it used for by the defendant? A For fluming cane. Q Where does the extension come from? A Mauka, and cuts through Mr. Gamalielson's land. Q And goes in what direction then? A I think it perhaps goes to Kukuau. I am not sure. Q Is there water running in it? A Yes, although I have passed at times when it was dry. Q What is it generally used for? A Fluming cane mauka to makai. Q By the defendant? A Yes. Q How long have you known this defendant? A Over thirty years. Q And at the present time, and last year, they were fluming cane? A I couldn't say. I have passed when they were fluming. I have seen them fluming cane there. Q Have you been up there within the last few days? A Yes. Q What was the flume used for then? A I didn't notice." *On cross-examination*: "Q Now, Mr. Cook, you have testified that you have known this land for a long time? A Yes. Q How long? A Over thirty years. Q As a matter of fact, your business as surveyor has frequently taken you to that district? A Yes, and when the first government traverse along that road was made by the Territory, I was in the employ of the Territory and I made it, some thirty years ago. Q You say this flume, which is on Mr. Gamalielson's land is the Hilo Sugar Company's flume? A Yes. Q The main flume? A I don't know if it is the main flume or a side flume. Q Do you know if it is the main flume through Kaumana which carries cane to the mill? A Perhaps it is. Q You know it, don't you? A I don't know if you would call it the main flume or not. There used to be another flume beyond, belonging to the Hilo Sugar Company, which took cane over. I don't know which is the main flume. Q You understand the difference between

main flumes and lateral flumes? A Yes. Q This is not what you would call a lateral flume? A I would almost say it was the main flume. Q As a matter of fact, you know it has been there for a long time? A Yes. Q Do you know how long? A Well, a long time. * * * Q I understood you to say, Mr. Cook, or rather finally say, that this was part of the main flume which connected with the mill for transporting cane to the mill? A I presume it connects with the mill. I have never followed it down from Mr. Gamalielson's place. Q Do you know how far north it runs? A I am not certain. It runs mauka quite a distance. In fact I think it runs mauka to their waterhead. Q Do you know what distance that would be from the bridge? A No. Q Approximately? A I could not say. Q Do you know where the waterhead is? A No, I have no location of that waterhead. Q The nature of the construction of this flume is for a considerable portion of the way on trestles, is it not? A Yes, some of it close to the ground. Q Some of it low and some high, but on substantial trestles? A Yes. Q You say you know it has been in the same place for twenty years? * * * A Yes. Q At least twenty years? A I couldn't say just twenty, or eighteen, but it has been there a long while. Q You know it has been there at least fifteen years? A I should judge it has. Q Your best recollection is somewhere around twenty years? A Around that vicinity." We have set this evidence out in full in order to show how utterly it fails to establish title by adverse possession.

When the plaintiff in an action of ejectment proves a good paper title and the defendant relies on adverse possession to defeat it the burden is on him to prove not only possession during the statutory period but that his possession had all the characteristics necessary to the acquisition of title. The evidence which we have quoted

and which is relied on by the defendant shows nothing, so far as the defendant is concerned, but the bare facts of occupancy of the land and the ownership and use of the flume. It does not even tend to prove when the defendant's possession originated or when its ownership of the flume was acquired or when its use of it began. For aught that appears to the contrary it may have been originally built by the plaintiff and its use by the defendant merely permissive.

Finally, the defendant contends that even if the testimony of Cook did not show title by adverse possession it was sufficient to show an easement by prescription and that this justifies the nonsuit. This contention must fall for the same reason that the contention of title by adverse possession must fall. As we have just seen, there is nothing in the evidence to indicate when the defendant became the owner of the flume or when it began to use it for the transportation of its sugar cane.

The exception we have considered is sustained, the order granting a nonsuit is set aside and a new trial is granted.

*C. W. Carlsmith* (*C. S. Carlsmith* and *M. L. Carlsmith* with him on the briefs) for plaintiff.

*H. Irwin* (*Robertson & Castle* with him on the brief) for defendant.

CONCURRING OPINION OF PARSONS, J.

I concur in the conclusion reached by the court as set forth in the foregoing opinion. Defendant's motion for a nonsuit as therein disclosed was upon the ground that plaintiff's evidence showed that defendant had been in possession of the land described in the declaration for at least fifteen years, that this possession had not been explained and that such unexplained possession for the statutory period gave rise to a presumption of title in

the defendant. Upon this motion the court ruled as follows: "From the state of the evidence and the law I think the motion for nonsuit should be granted and the motion is granted."

The proof lacked at least two essentials to a showing of title in the defendant by adverse possession, viz., (a) exclusiveness of defendant's possession and (b) claim of ownership by the defendant. See *Ward* v. *Cochran*, 150 U. S. 597, 609; *Iona* v. *Uu*, 16 Haw. 432, 434. Defendant in its brief does not claim that plaintiff's evidence shows exclusive possession by the defendant of the land described in the declaration; and as to claim of ownership of the same, defendant in its brief expressly admits that "we did not, during the trial, nor do we now, claim title in fee by adverse possession."

But, the defendant argues, "the judgment of nonsuit should be sustained if proper upon any theory of the law and evidence," and submits that it is sustainable on the theory that plaintiff's evidence showed affirmatively an easement by prescription on the part of the defendant in the land described in the declaration. Counsel aver that "the trial court decided the motion upon that theory." The motion, as above shown, was not made on that ground and the record does not disclose that it was sustained on any ground other than the one set forth in the motion. But even if, contrary to fact, we were to assume that a sufficiently defined easement in the defendant had been proved by plaintiff's evidence, that fact alone, at least in view of the issues made by the pleadings, would not be sufficient to defeat plaintiff's right of action. *Jacobson* v. *Hayday*, 83 N. J. L. 537, is in point. Quoting from pages 538 and 539 of the opinion of the court in that case: "Assuming, but not conceding, that, as defendant claims, this deed subjects plaintiff's land to an easement of way in favor of defendant, the situation, when the trial court

directed the verdict, was that the plaintiff in ejectment had a paper title to the fee of the land, derived from an ancestor in title who had possession as well as title, while the defendant relied for justification of his plea to the right of exclusive possession upon an alleged right of way or easement to pass and repass over the land. If the defendant had clearly established the easement he claims, it would be no defence to this action, for a fee and an easement in an estate are independent rights when vested in different persons, and each may vindicate their respective rights by an action at law, the one to enforce his fee, and the other to 'protect' an interference with his easement, but a right of way over lands, held by another in fee, will not support a defence in an action in ejectment which rests upon a mere right of way, for the plaintiff has a right to assert his title to the fee, and the adjudication of that question in his favor will not destroy the right of the holder of such an easement. The judgment in such case, if in his favor, settles the plaintiff's right to possession, subject to the easement if it exists. *Burnet* v. *Crane*, 27 Vroom 285."

The rule above followed has had general recognition. "It is well settled, as a general rule, that an action of ejectment will lie by the owner of the fee to recover land subject to an easement or servitude; or, as the rule is sometimes stated, the fact that the defendant in an action of ejectment has an easement, or right in the nature of an easement, in the land sought to be recovered, does not bar the plaintiff's right of recovery." 9 R. C. L. 837; case note, 1 Ann. Cas. 863; see 19 C. J. 1076; see also *Medeiros* v. *Koloa Sugar Co.*, 29 Haw. 43, 47.

For the foregoing reasons I agree that exception four should be sustained, and that the order granting a nonsuit should be set aside and a new trial granted.